## JACKSON v. CHICAGO, M. & ST. P. RY. CO.

(District Court, W. D. Washington, N. D.   February 2, 1914.)

No. 2622.

COMMERCE (§ 27*)—INJURY TO SERVANT—RAILROAD CONSTRUCTION—EMPLOYERS' LIABILITY ACT.

Where plaintiff while engaged in the construction of a tunnel, to be used when completed by a railroad in interstate commerce, was injured by the alleged negligence of a railroad company, plaintiff could not recover under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), which only deals with the liability of the carrier engaged in interstate commerce for injuries sustained by its employés while engaged in such commerce, and does not apply to a railroad construction which has not yet become an instrumentality of commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

At Law.   Action by L. F. Jackson against the Chicago, Milwaukee & St. Paul Railway Company.   On demurrer to complaint.   Sustained.

Griffin & Palmer, of Seattle, Wash., for plaintiff.

Geo. W. Korte, of Seattle, Wash., for defendant.

The following authorities are cited in support of their respective contentions: Plaintiff: Zikos v. Ore. R. & Nav. Co. (C. C.) 179 Fed. 893; Colasurdo v. Central R. R. of New Jersey (C. C.) 180 Fed. 832; Behrens v. Ill. Cent. R. Co. (D. C.) 192 Fed. 581; Johnson v. Great Northern Ry., 178 Fed. 643, 102 C. C. A. 89; Darr v. Baltimore & O. R. Co. (D. C.) 197 Fed. 165; Northern Pac. Ry. Co. v. Maekl, 198 Fed. 1, 117 C. C. A. 237; Thompson v. Columbia P. S. R. Co. (D. C.) 205 Fed. 203; Horton v. Oregon, Wash. R. R. Nav. Co., 72 Wash. 503, 130 Pac. 897; Second Employers' Liability Cases, 223 U. S. 1, 48, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44.   Defendant: Employers' Liability Cases, 207 U. S. 463, 498, 28 Sup. Ct. 141, 52 L. Ed. 297; Pedersen v. Ry. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125; St. Louis, S. & T. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129; Mondou v. Ry., 223 U. S. 54, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Seaboard Ry. v. Duvall, 224 U. S. 477, 32 Sup. Ct. 790, 56 L. Ed. 1171; Lamphere v. Ry., 196 Fed. 336, 116 C. C. A. 156; Zachary v. Ry., 156 N. C. 496, 72 S. E. 858; Meese v. Nor. Pac. (D. C.) 206 Fed. 222; Johnson v. Ry., 196 U. S. 33, 25 Sup. Ct. 158, 49 L. Ed. 363; The Daniel Ball, 10 Wall. 557, 19 L. Ed. 999; Kidd v. Pearson, 128 U. S. 25, 9 Sup. Ct. 6, 32 L. Ed. 346; Louisville Ry. v. Mississippi, 133 U. S. 587, 10 Sup. Ct.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

348, 33 L. Ed. 784; Norfolk Ry. v. Pa., 136 U. S. 114, 10 Sup. Ct. 958, 34 L. Ed. 394; Peet v. Mills, 136 Pac. 685, Nov. 28, 1913; Straus v. Foxworth, 231 U. S. 162, 34 Sup. Ct. 42, 58 L. Ed. ——.

NETERER, District Judge. This is an action commenced by the plaintiff against the defendant based upon the Employers' Liability Act of April 22, 1909, in which it is alleged, in substance, that the defendant maintains a system of railways in Washington, Montana, and other states, over which it carries interstate commerce, and:

"That as a part of said system, said defendant maintains a railroad track from Rockdale in the state of Washington, to Horrick Spur in the state of Washington. That said portion of said track is maintained upon very steep grades, and around many sharp curves along and through a very mountain-, ous country, and portions of said track are in a very great danger of being completely destroyed by slides of snow, dirt, and rock. That by reason of said conditions and locations, said track is maintained at a very great expense to said defendant, and at a great risk of the lives of the employés of said defendant, and the transportation of interstate commerce between said Horrick Spur and said Rockdale is very uncertain, dangerous, slow, and expensive, and at certain seasons of the year is greatly hampered, delayed, and interrupted, and sometimes absolutely impossible, because of the deep snow in said mountains.

"For the purpose of avoiding the dangers and delays to the transportation of interstate commerce, and escaping the heavy expense and great inconvenience of maintaining said track between the points above mentioned, and for the further purpose of facilitating and making certain and practical the transportation of interstate commerce over said line, said defendant condemned and obtained a right of way on a more direct line between said Horrick Spur and said Rockdale, and undertook and commenced the construction of a tunnel connecting its line of railroad at Rockdale with its line of railroad near Horrick Spur, and through which, when completed, the interstate commerce, heretofore carried over the circuitous, dangerous, slow, hazardous, expensive, and mountainous track between said Rockdale and said Horrick Spur, will be routed and transported to the exclusion and in the place of the present and unsatisfactory road now maintained by said defendant between said points.

"That on or about the 2d day of November, 1913, the east end of said tunnel had been advanced and driven about 400 yards into the mountain side; in advancing and driving said tunnel said defendant employed certain men, commonly known as machine men, to drill holes into the rock for the purpose of filling the same with powder, the explosion of which caused rock around said holes to be loosened and broken. Said defendant furnished said machine men for that purpose certain drill machines which weighed about 200 pounds, and which rested and stood up three straight upright supports, and to which was connected a certain tube conducting compressed air. Near the center of said tunnel and along the floor of the same, there was laid a certain narrow gauged two-railed car track, over which was transported cars containing rock and dirt removed from said tunnel. At interva's along said track were laid and maintained several switches and side tracks on which cars were placed while being loaded with rock and dirt.

"That on said 2d day of November, 1913, plaintiff, L. F. Jackson, was in the employ of the defendant as a teamster, at the agreed wages of $3.60 per day, and was engaged in driving the horse which pulled the cars filled with dirt and rock along the track out of said tunnel. That the method provided by said defendant of removing said cars was to attach several of them together, making a train, and hitch said horse to the front car of said train by means of a chain, which permitted the cars to be pulled ahead, but which did not assist the said horse in stopping said cars, nor were there any appliances or equipment, either on said horse or cars, for the purpose of stopping said cars, it being unnecessary in the usual and ordinary operation of

said train of loaded cars to stop the same until the outer end of the tunnel was reached, where said cars were stopped by contact with other cars or an engine. That about 6 p. m. on said date, said plaintiff, while returning to the head of said tunnel with a train of empty cars, informed and notified certain drill men and machine men, who were at work about 150 yards from the head of said tunnel, and who had just removed their machine from the track to allow him to pass, that he would immediately return with a train of loaded cars, and directed them not to replace the machine upon said track, or to obstruct the same in any way until he had passed out with his loaded train. Plaintiff proceeded for about 75 yards to near the head of said tunnel, where he obtained a train of loaded cars, and proceeded to drive said horse along said track toward the outer end of said tunnel. That upon approaching and within a few feet of the point where he had passed the said drill men and machine men mentioned, he, owing to the lack of sufficient light, and because of the said track and the whole floor of said tunnel being covered with several inches of muddy water, for the first time noticed and observed that the said drill men, contrary to request and direction, had replaced the said drill machine upon the track, and the same obstructed and prevented the passage of the train of cars under his supervision, and made it necessary to stop said train immediately. That in order to stop said train, plaintiff stopped the horse pulling said train, descended from the car upon which he was riding, and, there being no brakes or other appliances furnished to stop said train, nor any means by which the horse could so do, plaintiff took hold of said car with his hands, and, bracing himself with his feet, was attempting to stop said train when his right foot was caught in a switch joint between the rail of the main track and the rail of one of the switches heretofore mentioned, unobserved by him because of the same being entirely covered with muddy water. That by reason of plaintiff's right foot being so caught in said switch, plaintiff's body was thrown violently forward, along and over said track, and the car wheels upon the left side of said car rolled over and upon his said right foot, and along his said leg, until said car wheel was near plaintiff's right knee, when said train stopped.

"That because of said car wheel rolling upon plaintiff's said ankle, foot, and leg, the flesh and muscles of the same were cut, bruised, torn, and lacerated, the tendons, ligaments, cartilage, were dislocated, sprained, crushed, bruised, and torn, made weak and sore. That said injuries caused this plaintiff great pain and suffering which he still experiences and endures, and will continue to experience and endure for a long time to come. The injuries to plaintiff's said foot and ankle, except the bruises and cuts, are permanent, and will cause his said ankle to be weak and painful, and will interfere with plaintiff's work and cause him to be lame for the remainder of his life. That by reason of said injuries plaintiff has been to date, compelled to cease work for one month, and will not be able to return to work of any kind for about one month. To his damage in the sum of $216. That in addition to said special item of damage, plaintiff has suffered damages in the sum of $10,000."

The complaint further alleges that the injuries to plaintiff were caused by the negligence and carelessness of the defendant, and not through any negligence of the plaintiff which contributed thereto, and that the injuries resulting to the plaintiff were sustained while—

"the said defendant and all of its agents and employés mentioned herein, including this plaintiff, were engaged in interstate and foreign commerce in such a manner that their mutual connection with intrastate work was not separable and distinguishable from interstate or foreign commerce. That the plaintiff is entitled to bring this action under the act of Congress of the United States regulating the liability of their employés of common carriers engaged in interstate and foreign commerce."

To this complaint the defendant has interposed a demurrer upon two grounds: (1) That said complaint does not state facts sufficient

210 F.—32

to constitute a cause of action; (2) that the court has no jurisdiction of the subject-matter of the action.

The question to be determined is: (1) Do the foregoing facts show that the plaintiff was injured by the defendant while it was engaged in commerce between any of the several states? (2) Was such injury sustained by the plaintiff while he was employed by the carrier in such commerce?

The demurrer to the complaint confesses all facts properly pleaded. Any statement of a conclusion which is not supported by facts set forth in the complaint to sustain it, under the rule that a demurrer admits only facts well pleaded, is to be disregarded. Straus v. Foxworth, 231 U. S. 162, 34 Sup. Ct. 42, 58 L. Ed. ——.

Stripped of the conclusions in the complaint, we have the fact that the defendant is engaged in constructing a "cut-off" on its line of road so as to shorten the route used by it now and eliminate some of the inconveniences, and possible expense, in the operation of the line at the present time. There is no statement that this line, upon which the work is being performed, is now used, but the complaint in paragraph 3 says, "and through which, when completed, the interstate commerce * * * will be routed." The plaintiff was not himself engaged upon any interstate commerce, nor was he injured by any one connected with the operation of any of the agencies which actually transported interstate commerce. The building of this cut-off is a facility which is to be used by the defendant, when completed, as an engine or cars, or any other appliance under construction might be considered for use when completed. Can it be said that a person engaged in the building of engines or cars, or any other facilities to be used by a common carrier engaged in interstate commerce, comes within the provisions of the Employers' Liability Act? The act deals only with the liability of a carrier engaged in interstate commerce for injuries sustained by its employés while engaged in such commerce. Second Employers' Liability Cases, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44. The act is not "concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities, and during their use as such." Pedersen v. Del., Lack. & West. R. R., 229 U. S. 146, 152, 33 Sup. Ct. 648, 57 L. Ed. 1125. The language of the complaint, "when completed, the interstate commerce * * * will be routed" through the tunnel, conclusively shows that it is not now so employed; hence the act cannot apply, and Supreme Court decisions supra are decisive.

Tested by the requirements of the act, I do not think that the tunnel was used as an appliance in transporting interstate commerce, nor was the plaintiff employed in such commerce. All of the cases cited, I think, are in harmony with this conclusion.

An order may be entered sustaining the demurrer.