C. E. Ross, Administrator, Appellant, v. PARLEY SHELDON et al., Receivers, Appellees.

**COMMERCE: Interstate—Intrastate Railway Receiving Interstate**
1 **Shipments.** A railway located wholly within the state, and operating no trains outside the state, but having connections with interstate lines from which it receives freight originating outside the state and consigned to points on its line, is engaged in interstate commerce.

**COMMERCE: Interstate—Who Deemed Engaged In—Repair of In-**
2 **strumentality.** One engaged in the *repair* and *maintenance* of an instrumentality of interstate commerce is deemed to be engaged in interstate commerce and within the protection exclusively of the Federal Employers' Liability Act. (Act April 22, 1908, ch. 149, 35 Stat. L. 65.)

DEEMER and WEAVER, JJ., dissent.

PRINCIPLE APPLIED: Along the track of an interstate electric interurban railway was a line of poles, with cross-arms carrying various wires, including telegraph, block signal, power and feed wires. The signal system was operated by hand and was inadequate. The company determined to install a new system by putting on additional cross-arms, transferring the old signal wire thereto, with additional wires, and operating the same by an automatic device. While nailing one of these cross-arms to a

pole, decedent came in contact with a live wire on the old cross-arms and was killed. *Held*, deceased was engaged, not in construction work, but in the *repair* and *maintenance* of an instrumentality of interstate commerce,—was, therefore, engaged in interstate commerce,—and an action for damages must be brought under the Federal Act.

    Note: The court says: ''The distinction between 'repair' and 'construction' work must not be drawn too fine.''

**APPEAL AND ERROR:** Judgment on Defense in Abatement—Modification to Avoid Bar. A judgment sufficiently broad to stand as an adjudication in bar, when in fact entered on a defense in the nature of an abatement, will be so modified on appeal as to avoid the adjudication in bar. So held where plaintiff suffered an adverse judgment in the lower court because of having based his right to recover on a state instead of a Federal statute.

*Appeal from Story District Court.*—W. S. Ayres, Judge.

TUESDAY, OCTOBER 26, 1915.

REHEARING DENIED WEDNESDAY, JUNE 28, 1916.

ACTION by an administrator to recover damages for the death of the intestate decedent. At the close of the evidence, there was a directed verdict for the defendant. The ground of such direction was that the decedent and the defendant were engaged in interstate commerce at the time of the injury, the petition declaring upon a cause of action under the state law and not under the Federal Act. The plaintiff appeals. —*Modified* and *Affirmed*.

*C. W. E. Snyder* and *Charles F. Maxwell*, for appellant.

*Ed. McCall, S. R. Dyer, J. W. Jordan* and *W. R. Dyer*, for appellees.

EVANS, C. J.—I. The plaintiff brought his action under the state law, claiming damages to the estate of the deceased for the wrongful death. Among other defenses, the defendant pleaded that, at the time of the accident which resulted in the death of the decedent, the decedent was engaged as an

employee of the defendant in interstate commerce, and that the plaintiff's rights, if any, were covered by the Federal Act applicable in such a case. The plaintiff adhered to his petition. At the close of the evidence, various grounds were urged by the defendant in support of the motion for a directed verdict. Inasmuch as the motion was sustained upon the ground already indicated, we shall have no occasion to consider any other question upon this record.

The material facts pertaining to the question whether the employment of the decedent at the time of his injury was concerned with interstate commerce are not in dispute.

1. COMMERCE: interstate: intrastate railway receiving interstate shipments.

The line of the defendant railway was wholly within the state of Iowa. It operated no trains outside of the state of Iowa. It was an interurban electric line extending from Des Moines to Fort Dodge. The decedent was a regular lineman. He was engaged in the duties of a lineman at the time of his fatal injury. It appears, however, that, by means of connections with other lines of railway, more than 80 per cent of the business of the interurban line was interstate business. It received freight from connecting lines originating without the state and destined to points upon the line of the defendant. The defendant railway was therefore engaged in interstate commerce. It was thus engaged upon the day of the accident. Some point is urged by the appellant that it does not appear that it was thus engaged at the moment of the injury. The evidence does not deal in detail with the business actually moving at the moment of the injury. It does show that a large amount of interstate business was done on that date. If it be material to identify the business in progress at the moment of the injury as interstate business, we think no other inference would be permissible under the facts shown.

Was the employment of the decedent connected with interstate commerce? The line of defendants' railway was

operated under electric power.  Alongside the railway track was its line of poles, all carrying cross-arms.

2. COMMERCE: interstate: who deemed engaged in: repair of instrumentality.

Upon these cross-arms were extended various wires, including telegraph, block signal, power, and feed wires.  The decedent was engaged in putting additional cross-arms upon the poles.  The intended use of such additional cross-arms was that the signal wire theretofore used should be transferred thereto, and that five or six additional signal wires should be carried thereon.  The single signal wire was deemed insufficient for the use of the company.  The signal system had been operated by hand.  It was now in contemplation to operate the same by an "automatic," system which would be more efficient than the single wire and the "hand" system.  While at work in nailing a cross-arm upon a pole in pursuance of this purpose, the decedent was killed by contact with some of the wires upon the other cross-arms.  The contention for the appellee is that the pole and cross-arm and signal wires upon which he was working and in contact with which he met his death were a part of the necessary instrumentalities of defendants' interstate commerce, and that the injury to the decedent occurred while he was engaged in the work of repair and maintenance.  If this is a proper characterization of the work in which the decedent was engaged, then it is quite settled that the plaintiff's case is covered by the provisions of the Federal Act. On this question, we need look no further for authority than the case of *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146.  The evidence in that case was stated in the opinion as follows:

"The evidence, in that view of it which must be taken here, was to the following effect:  The defendant was operating a railroad for the transportation of passengers and freight in interstate and intrastate commerce, and the plaintiff was an iron worker employed by the defendant in the alteration and repair of some of its bridges and tracks at or near Hobo-

ken, New Jersey. On the afternoon of his injury the plaintiff and another employee, acting under the direction of their foreman, were carrying from a tool car to a bridge, known as the Duffield bridge, some bolts or rivets which were to be used by them that night or very early the next morning in 'repairing that bridge,' the repair to consist in taking out an existing girder and inserting a new one. The bridge could be reached only by passing over an intervening temporary bridge at James Avenue. These bridges were being regularly used in both interstate and intrastate commerce. While the plaintiff was carrying a sack of bolts or rivets over the James Avenue bridge, he was run down and injured by an intrastate passenger train, of the approach of which its engineer negligently failed to give any warning.''

The following discussion in the opinion is quite relevant to the case before us:

''Among the questions which naturally arise in this connection are these: Was the work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroads as are engines and cars; and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition, and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency . . . in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment' used in interstate commerce. But independently of the statute, we are of opinion that the work of keeping such instrumentalities in a proper state of

repair while thus used is so closely related to such commerce
as to be in practice and in legal contemplation a part of it.
The contention to the contrary proceeds upon the assumption
that interstate commerce by railroad can be separated into
its several elements, and the nature of each determined
regardless of its relation to others or to the business as a
whole. But this is an erroneous assumption. The true test
always is: Is the work in question a part of the interstate
commerce in which the carrier is engaged? . . . Of course,
we are not here concerned with the construction of tracks,
bridges, engines or cars which have not as yet become instru-
mentalities in such commerce, but only with the work of
maintaining them in proper condition after they have become
such instrumentalities and during their use as such. True, a
track or bridge may be used in both interstate and intrastate
commerce, but when it is so used it is none the less an instru-
mentality of the former; nor does its double use prevent the
employment of those who are engaged in its repair or in
keeping it in suitable condition for use from being an employ-
ment in interstate commerce. The point is made that the
plaintiff was not, at the time of his injury, engaged in remov-
ing the old girder and inserting the new one, but was merely
carrying to the place where that work was to be done some
of the materials to be used therein. We think there is no
merit in this. It was necessary to the repair of the bridge
that the materials be at hand, and the act of taking them
there was a part of that work. In other words, it was a
minor task which was essentially a part of the larger one, as
is the case when an engineer takes his engine from the round-
house to the track on which are the cars he is to haul in
interstate commerce."

There is no appropriate reason why we should attempt
to add argument to the foregoing. Our concern in this class
of cases is to follow carefully the law laid down by the
Supreme Court of the United States as the one source of
judicial authority thereon.

The contention of the appellant is that the work in which the decedent was engaged was not *repair* or *maintenance* work, but was new *construction* work. That there may be a distinction between repair work and construction work is recognized in the *Pedersen* case, supra. The argument for appellant is that the lines and instrumentalities of the defendants were complete, and, as such, in *repair* without the addition of new cross-arms, and without the proposed addition of new wires and without the proposed "automatic" system; that, while the automatic system was proposed to be used upon the line (and therefore in interstate commerce), it had not yet been thus used. The line of demarcation between repair work on one hand and construction work on the other is not always easily discernible. Repair often, if not usually, involves more or less construction and substitution. It likewise involves betterment and improvement. The recent decisions of the Supreme Court are, in effect, declaring the rules of construction which shall guide all the courts and litigants in determining whether the facts in a given case bring it within the Federal Act. It is highly desirable that such rules attain as great a degree of certainty as practicable, and such is the manifest aim of the high court. To such end, the distinction between "repair" and "construction" work must not be drawn too fine. The trend of the cases thus far decided indicates that labor and betterment upon an interstate line of railway will not be deemed as new construction work, unless it is clearly such. That is to say, mere doubt will be resolved in favor of "repair and maintenance." The substitution of a 90-pound rail for a 60-pound rail partakes of the nature both of repair and construction; likewise the substitution of *five* wires for *one* or the addition of *four* wires to *one*. In the case before us, the new cross-arms were attached to the old poles. They were intended for the support of the old wire and others. They were not an independent construction. They could not stand

alone. They had no function to perform except as a part of the electrical system of the defendant railway, which system was in actual operation at the time of the injury. True, substitution had not been actually made, but this was the condition in the *Pedersen* case. Whether the work is "repair" or "construction" depends somewhat upon the real entity upon which the labor is being wrought. Appellant concentrates his mind upon the new "automatic system," as distinguished from the old "hand system." Regarding the "automatic system" as a separate and distinct entity, he naturally argues that it only came into being as a result of new and independent construction. We think, however, that it cannot be regarded as the real entity upon which we must look in passing upon the question before us. The signal system, whether "hand" or "automatic," was a part of the electrical system of the defendants, all of which was carried physically upon the same line of poles. While various functions attached to various wires, yet the decedent, as a lineman, sustained the same relation to each and all, and they each and all sustained the same relation to interstate commerce.

The Federal Act in question laid upon the defendant, as a carrier of interstate commerce, not only the duty of mere *repair,* but the duty to maintain *sufficiency in its equipment.* The most that can be said in concession to the appellant is that the defendant was engaged in curing an "insufficiency of equipment," and that the decedent was engaged in work to that end. We reach the conclusion that the evidence brings the case within the operation of the Federal Act in question, and that this action, brought by the plaintiff under the state laws, was properly dismissed for that reason. This conclusion is consistent also with those Federal cases which have placed within the contemplation of the Federal Act, section hands and trackmen upon railways used indiscriminately for state and interstate commerce. See *Zikos v. Oregon R. & N. Co.* (C. C.), 179 Fed. 893; *Central R. Co. v.*

*Colasurdo* (C. C.), 192 Fed. 901; and the case of *Darr v. Baltimore & O. R. Co.* (D. C.), 197 Fed. 665, where the same was held as to the repairer of a car used indiscriminately.

II.   It should be noted, however, that the form of the verdict and judgment did not indicate the ground upon which they were rendered.   The defense sustained was in the nature of an abatement.   The judgment ought not

**3. APPEAL AND ERROR: judgment on defense in abatement: modification to avoid bar.**

to be deemed a bar to an appropriate action under the Federal Act.

The form of the judgment will therefore be modified so that it shall appear upon the face thereof that it was rendered upon the ground herein indicated.   In other respects, the judgment will be affirmed. —*Modified* and *Affirmed.*

LADD, GAYNOR, PRESTON and SALINGER, JJ., concur.

DEEMER and WEAVER, JJ., dissent.

DEEMER, J. (dissenting).—As I understand the record, the deceased, at the time he was injured, was not engaged in repairing an old block or signal system, but was employed to, and was, in fact, engaged in putting on new cross-arms upon the telegraph poles, for the purpose of installing an entirely new and independent automatic system, to replace the old hand system—a system which required new arms, wires, and new construction throughout.   True, the old poles were being used, and it was contemplated that some of the old wires might be used; but, until the new system was completed, the old was in use, and was the only one which was engaged in, or had anything to do with, interstate commerce. The new arms had not been placed, nor had any new wires been strung, nor had there been any use made of the proposed new system, in any kind of commerce.   It may be that plaintiff was a regular lineman; but he was not then engaged in anything connected with interstate commerce, or with anything essential to interstate commerce.   He was in no better position, as I view it, and in no worse, than if he had been engaged in constructing a new line of track, for the purpose

of making a double track system across the state, instead of a single track one, and had been injured before the new track had been used in interstate commerce.

The record does not indicate that the old hand system needed any repairs. As a hand system, it was answering its purpose, and was, in fact, doing all the work of a block system for both intra- and interstate commerce, at the time plaintiff was injured. It was not the betterment, even, of an old system, but the construction of a new and independent one; and it does not matter, I think, that part of the old was to be used with the new, when the new one was constructed. Surely, if the plaintiff had been engaged in the construction of another track to make a double-tracked road, which new track had never been used in commerce of any kind, the use of old rails which had once been used in interstate commerce, even as a part of a railway engaged in interstate commerce, would not affect the matter, in any way. Notwithstanding the intimation in the majority opinion, that the defendant was making this change in compliance with its duty under the Federal law, I do not think there was any defect in its old hand system, or anything disclosed by this record which would justify the Interstate Commerce Commission, or any other court or tribunal, in ordering the defendant to put in the automatic system. Surely, there is no law, either Federal or state, which would require it to do so. Indeed, I doubt if there is any law requiring railways to put in any signal system, either hand or automatic. If they do so, it is an economic measure, insuring safety, and guarding against loss. The automatic is doubtless less expensive in the long run than the hand system, but I can find no law which requires of railways that they substitute one for the other.

The case does not differ, I think, from one where a railway, in the furtherance of its business, concludes to install, in addition to its telegraphic system of controlling trains, a telephonic system, to act either in conjunction with the telegraph or independently of it; and, while in the construction

of the telephonic system, and before it is used at all, an employee, engaged in its construction, is injured.

In the *Pedersen* case, relied upon by the majority, it was distinctly held that the work in which the employee was engaged, was repairing a bridge, which had theretofore been, and was then, an instrumentality in interstate commerce; and the court expressly said that it was not deciding a case involving the construction of tracks, bridges, etc., which had not, as yet, become the instrumentalities of interstate commerce, "but only with the work of maintaining them in proper condition after they have become such instrumentalities, and during their use as such."

It was found, in the cited case, that the injured party was engaged in repair work, and in keeping the instrumentality in suitable condition for use. To my mind, that case is really an authority against the conclusion reached by the majority.

Three things must appear, to bring a case within the Federal Employers' Liability Act: (1) The carrier must be engaged in interstate commerce; (2) it must, at the time of the injury in question, be engaging in commerce of that character, as contradistinguished from such purely local matters as it may engage in; (3) the injured servant must also, at the time of receiving his injury, be engaged in interstate commerce. See the Federal Act passed April 22, 1908 (ch. 149, 35 Stat. L. 65); *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146 (33 Sup. Ct. R. 648); *Mondou v. New York, N. H. & H. R. R. Co.* 223 U. S. 1 (32 Sup. Ct. R. 169); *Sea Board Air Line Ry. v. Moore,* 228 U. S. 433 (33 Sup. Ct. R. 580); *St. Louis, S. F. & T. R. Co. v. Seale,* 229 U. S. 156 (33 Sup. Ct. R. 651); *North Carolina R. Co. v. Zachary,* 232 U. S. 248 (34 Sup. Ct. R. 305); *Grand Trunk W. R. Co. v. Lindsay,* 233 U. S. 42 (34 Sup. Ct. R. 581); *Illinois Cent. R. Co. v. Behrens,* 34 Sup. Ct. R. 646.

In the latter case it is said:

"The controlling provision in the act of April 22, 1908, reads as follows: 'That every common carrier by railroad

while engaging in commerce between any of the several states . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.' Giving to the words 'suffering injury while he is employed by such carrier in such commerce' their natural meaning, as we think must be done, it is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employee is engaged is a part of interstate commerce. The act was so construed in *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146 (57 L. Ed. 1125, 33 Sup. Ct. Rep. 648, 3 N. C. C. A. 779). It was there said (p. 150): 'There can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employee is employed by the carrier in such commerce.' Again (p. 152): "The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?' . . . Here, at the time of the fatal injury the intestate was engaged in moving several cars, all loaded with intrastate freight, from one part of the city to another. That was not a service in interstate commerce, and so the injury and resulting death were not within the statute. That he was expected, upon the completion of that task, to engage in another which would have been a part of interstate commerce, is immaterial under the statute, for by its terms, the true test is the nature of the work being done at the time of the injury."

In the instant case, the deceased was not engaged in the repair of an instrumentality which had theretofore been used in both intra- and interstate commerce; but in the

construction of a new system of signals, which had never been used for either. The purpose of the statute, as said in *Mondou's* case, supra, is "to secure the safety of interstate transportation and of those who are employed therein." It is clear to my mind that deceased did not come to his death or receive his injuries while employed by defendants in interstate commerce, but that what he was doing was in the preparation for engaging therein in the future. In support of these views, see *Jackson v. Chicago, M. & St. P. R. Co.*, 210 Fed. 495; *Tsmura v. Great Northern R. Co.* (Wash.), 108 Pac. 774; *Pierson v. New York, S. & W. R. Co.* (N. J.), 85 Atl. 233; *Charleston & W. C. R. Co. v. Anchors* (Ga.), 73 S. E. 551; *Ruck v. Chicago, M. & St. P. R. Co.* (Wis.), 140 N. W. 1074.

In any event, I think the case should have gone to the jury, upon the question as to the nature of deceased's employment. I would, for these reasons, reverse the judgment.

WEAVER, J., concurs in the foregoing dissent.