MAUDE CRECELIUS, Administratrix of Estate of WALTER CRECELIUS, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

### In Banc, June 13, 1918.

1. **EVIDENCE: Stipulation: Waiver.** A written stipulation as to a certain fact, signed by plaintiff's and defendant's counsel, which, though offered in evidence by both sides for definitely restricted purposes, is ignored by both counsel and court—by counsel in introducing, without objection, testimony on one side inconsistent with or contradictory of, and on the other in support of, its statemets of fact, and by the court in the instructions given, without exceptions—is waived, and on appeal the ruling will be based on such testimony, and not upon the stipulation.

2. **NEGLIGENCE: Federal Employers' Liability Act: Interstate Commerce: Question for Jury.** Where there was substantial evidence, in the action brought under the Federal Employers' Liability Act for the negligent killing of a timekeeper, that the trackmen in connection with whom he was employed were at the time engaged in work on both the main track, which was an interstate line, and in repairing or constructing a side track, which was an intrastate track and was not in use in interstate commerce, and evidence to the contrary that they had been engaged only in constructing the

side track, the question of whether the timekeeper at the time of his death was engaged in interstate commerce and whether the facts bring the case within the purview of said act, becomes one for the jury, with whose finding the court on appeal cannot interfere. And such must be the ruling, although at the time the timekeeper was killed the trackmen had ceased their work for the day and he, after making out his daily report, had started, thirty minutes later, as was his custom, to the telegraph office to send it to the road-master in another State, and was killed by a train as he was crossing a passing-track.

3. **CONTRIBUTORY NEGLIGENCE:** Federal Employers' Liability Act: Reduction of Damages. An instruction, in an action brought under the Federal Employers' Liability Act for the negligent killing of an employee, which tells the jury that, if they find that deceased was guilty of contributory negligence, "such finding and such fact of contributory negligence will not authorize a verdict in favor of defendant, but will only authorize that the damages assessed by you in favor of plaintiff be diminished by the jury in proportion to the amount of negligence attributable to said deceased," is erroneous. The act says that, in such case, "the damages shall be diminished," and the instruction should clearly tell the jury that they must reduce them, not simply tell them that they are "authorized" to do so.

4. **NEGLIGENCE:** Federal Employers' Liability Act: Measure of Damages: Motion for New Trial. The court will not review an instruction on the measure of damages in an action brought under the Federal Employers' Liability Act, if said instruction is in no manner mentioned in the motion for a new trial.

5. ———: ———: ———: Excessive Verdict: Abandoned in Brief. And if appellant complained in his motion for a new trial that the verdict was excessive, but fails to keep that complaint alive in the brief, it will not be reviewed.

Appeal from Grundy Circuit Court.—*Hon. Geo. W. Wanamaker*, Judge.

REVERSED AND REMANDED.

*Fred S. Hudson* for appellant.

(1) The deceased was not engaged in interstate commerce at the time of his death, as the accident occurred at 6:30 o'clock in the evening, after the day's work was over, and the test as to whether or not the

case is rightfully brought under the Federal Employers' Liability Act, is what the deceased was doing at the time of the injury. Illinois Central v. Behrens, 233 U. S. 473; Shank v. El. & W. Railroad., 239 U. S. 556; Erie Railroad v. Welch, 242 U. S. 303; Jacoby v. C. M. & St. P., 161 N. W. 753. (2) As deceased was an employee and not engaged in interstate commerce at the time of his death, was familiar with the yards and the movement of trains, the defendant owed him no duty except not to wantonly or wilfully injure him. The "last-clear-chance doctrine" would not apply in this case. Cahill v. Railroad, 205 Mo. 408; Dagonia v. Railroad, 224 Mo. 564; Rashall v. Railroad 249 Mo. 519; Gaball v. Railroad, 251 Mo. 270. (3) As the company at this time was engaged in constructing a temporary track and deceased was employed in this construction work, neither the deceased nor defendant was engaged in interstate commerce at the time of this accident, so far as the work that was being performed by both the defendant and the deceased is concerned. The construction work at that time was not and probably might never be used in interstate commerce. Pederson v. Railroad, 229 U. S. 146; New York Central v. White, 243 U. S. 188; Raymond v. Ry. Co., 243 U. S. 43; Bravis v. Ry. Co., 217 Fed. 234; Chicago & E. Railroad v. Steel, 108 N. E. 4. (4) The stipulation filed in this case shows that the extra gang of which Crecelius was the time-keeper was constructing a temporary track, hence this suit is not properly brought under the Federal Employers' Liability Act. (5) Instruction 11 on the measure of damage is erroneous and is not the proper method of determining damage under the Federal Employers' Liability Act. C. & O. Railway v. Kelley, 241 U. S. 485; C. & O. Railway v. Gainey, 241 U. S. 494. (6) Instruction 5 does not properly declare the rule for assessing damage under the law under which this case is brought. Dowell v. Railroad, 190 S. W. 939; Seaboard Air Line Railroad v. Tilghman, 237 U. S. 499; Norfolk Railroad Co. v. Earnest, 229 U. S. 114.

*Platt Hubbell, Geo. H. Hubbell* for respondent.

(1) Defendant railway company negligently killed deceased. Pittsburg Ry. Co. v. Glinn, 219 Fed. 148; Delaware, L. & W. R. Co. v. Hughes, 240 Fed. 941; Seaboard Air Line Ry. Co. v. Koennecke, 36 Sup. Ct. Rep. 127; Huxoll v. Union Pac. R. Co. 155 N. W. 900; McWhirt v. Railway Co., 187 S. W. 830; Trivette v. Railway Co., 212 Fed. 641; Anest v. Railroad, 154 Pac. 1100; Kippenbrock v. Wabash R. Co., 194 S. W. 50; Jetter v. St. Joseph Terminal Ry. Co., 193 S. W. 956. (2) Defendant and deceased were engaged in interstate commerce at the time Crecelius was killed. This case is governed by the Federal Employers' Liability Act. Southern Ry. Co. v. McGlin, 240 Fed. 649; Cincinnati Ry. Co. v. Hall, 243 Fed. 76; Columbia & P. S. R. Co. v. Sauter, 223 Fed. 604; Pecos & Northern Tex. Ry. Co. v. Rosenbloom, 36 Sup. Ct. Rep. 390; Long v. Lusk, 186 S. W. 601; Grand Trunk Ry. Co. v. Knapp, 233 Fed. 950; North Carolina R. R. Co. v. Zachary, 232 U. S. 260; N. Y. C. & H. R. R. v. Carr, 238 U. S. 260; Ross v. Sheldon, 154 N. W. 499; Sells v. A. T. & S. F. Ry. Co., 181 S. W. 106; Pederson v. Railroad, 229 U. S. 146; Philadelphia B. & W. R. Co. v. McConnell, 228 Fed. 263; Sanders v. Railway Co., 97 S. C. 50; Railroad Co. v. Seale, 229 U. S. 156; Erie Railroad Co. v. Winfield, 37 Sup. Ct. Rep. 556; Denver & R. G. Railroad Co. v. DaVella, 165 Pac. 254. (3) The stipulation is not the only evidence of what defendant railway company and deceased were doing. Plaintiff has a right to prove that defendant and deceased were doing work additional to that mentioned in the stipulation. Plaintiff offered the stipulation "for the purpose of showing the use made of the work-train." Burnham et al. v. St. Ry. Co., 88 Fed. 628; 12 Ency. Evidence, 83, 84; 12 Ency. Evidence, 101, Note 71. (4) Plaintiff's instruction numbered 5 is correct. Kippenbrock v. Wabash R. Co., 194 S. W. 52; Norfolk & Western Ry. v. Earnest, 229 U. S. 120; M. K. & T. Ry. Co. v. Rentz, 162 S. W. 959; Illinois C. R. Co. v. Skaggs, 36 Sup. Ct. Rep. 252;

Fish v. Railroad, 263 Mo. 106; Haines v. Railroad, 193 Mo. App. 453; Iron Mountain v. Rogers, 176 S. W. 696; Humphfres v. Western Pac. Ry. Co., 160 Pac. 415.

FARIS, J.—This is an action brought by plaintiff, as the administratrix of one Walter Crecelius, deceased, against defendant, under the Federal Employers' Liability Act, for the alleged negligent killing of plaintiff's decedent. Upon a trial in the circuit court of Grundy County plaintiff had judgment for the sum of $25,000, from which judgment, after the conventional procedure, defendant has appealed.

As stated, plaintiff brings this action as the administratrix of said Crecelius, whom we. shall, for brevity, hereinafter call deceased. The deceased, at the time he lost his life, was in the employ of defendant as a timekeeper for a gang of Bulgarian and Armenian laborers, who were engaged at or near the little village of Morley, in the State of Iowa, in repairing the main line track of defendant, and in constructing a temporary track, thereafter to be used for main line traffic, pending the lowering of the grade of defendant's main interstate-railroad track. Deceased was killed at about the hour of 6:30 in the evening of March 14, 1913. At this time the gang of laborers of which deceased was timekeeper had quit work for the day and had returned to the boarding cars and eaten their suppers. It was the duty of deceased as timekeeper to make a record of the number of laborers engaged in work, of the hours worked by each laborer, of the nature of the work done by the gang, of the number of ties laid, the amount of steel put in, and various other details, showing the progress of the work and the material used therein. It was also the duty of deceased to make daily reports showing the above facts, as well as monthly reports, once each month. The reports, which deceased was required to make daily both by wire and by mail, were made to the division roadmaster at Marion, Iowa. He was accustomed to make out these reports after work hours, since this was the only time at which it was possible

for him to have the information which he was required to include in them. He was in the habit of preparing these reports between 6:30 o'clock and 7:00 o'clock in the evening of each day, and of transmitting same both by mail and by wire as early as possible thereafter.

On the day that deceased was killed, and after he with the gang of laborers had returned from work upon the main track and the said temporary track, he ate his supper and made out his daily report for transmission by wire to the roadmaster. A few minutes (one witness said two to five minutes) before he was killed, he left the car in which he kept his desk, with the remark that *he was going to send his message*. After going out of his office car he went into the car occupied by the interpreter of the gang. He remained in this car but a moment, and then came out and started across the tracks of defendant toward the depot, wherein the telegraph office was maintained. In the meantime, a freight train of defendant, called in the testimony a way-freight, had come up to the depot, and had stopped there apparently for the purpose of discharging freight. As deceased went across the tracks of defendant toward the depot, he stopped in the middle of what is called the passing-track, at a point some ten feet from the locomotive of the way-freight, and stood at this point apparently looking at this train. After he had been standing in this position for some twenty-five seconds, he was run down and killed by a car attached to the work-train, which was used in hauling the material for this gang of laborers. At this time the work-train was doing certain switching in the yards at Morley, for the purpose of making up the train to return to Marion, Iowa, which was a division point, and a station upon defendant's railroad some eighteen or twenty miles from Morley.

At the time deceased was killed he was in good health, except that he was very hard of hearing, and about thirty-five years of age. His wages at this time were $60 a month. He left surviving him a wife and

one child six years old, for whose use and benefit, the wife, as administratrix, is here suing.

There are keen contradictions in the testimony. The statement of the facts as made by us is taken largely from the testimony of witnesses adduced by plaintiff. This is done because a demurrer to the testimony was offered, and because the point here chiefly relied on for reversal is that there is not sufficient evidence to take the case to the jury; particularly, upon the point that deceased, when he was killed, was not engaged in the performing of such labors or duties as to bring him within the purview of the Federal Employers' Liability Act.

While upon the law applicable to such a contention, present defendant's negligence, the countervailing testimony as to the manner in which deceased lost his life is scarcely important, except as a matter of curiosity, we may yet say in passing that if the testimony of the witnesses for the defendant is to be believed, defendant was wholly without negligence, and deceased lost his life by his own gross lack of care and contributory negligence. Upon this sharply contradicted phase of the case the testimony adduced by plaintiff tended to show that it was dusk, approaching dark, and spitting snow slightly at the moment deceased was struck; that the work-train which struck him was running with an old gondola car in front of the engine; that this car prevented the engineer and fireman from getting a clear view of the track in front; that this work-train was running at a prohibited rate of speed, to-wit, about twelve miles an hour; that there was no brakeman, or other person on the front of the train to keep a look-out, and that deceased could have been seen and the train stopped in time to avoid striking him had defendant's servants, agents and employees kept a proper look-out, such as the situation demanded.

Touching this situation it further appeared that there were some hundred or more laborers engaged in this work and composing this gang; that all of these persons were housed in some boarding cars, which were

set upon a side track. This side track was separated from the town of Morley, and the depot, by the main track and the passing-track. It was necessary for all of these persons who were in this gang or engaged in work about these boarding cars to cross both the main track and the passing-track at all hours, and that defendant's crew in charge of this work-train knew this fact, and that it was the duty of defendant to exercise in all its switching operations a care commensurate with the dangers existent.

The testimony on the part of defendant tended to show that at the time the deceased was killed the work-train was running only some six or seven miles an hour; that the gondola car, which was in front of the locomotive, was a small one, so that both the fireman and engineer could see over it, and that there was maintained a look-out at the time of the accident; that a brakeman was standing at the brake-wheel on a small platform on the front end of the car which struck and killed deceased. Some three or four witnesses, for defendant, who say they were in a position to see and did see the whole casualty, testified that as the work-train approached a point opposite the interpreter's car, deceased came hastily out of this car, passing therefrom on a board laid from the car to the top of a pile of coal, and ran down this pile of coal directly in front of the work-train; that when he came out of the interpreter's car, the work-train was only some twenty-five feet distant, and that without looking or stopping, deceased traversed rapidly the space of some six or eight feet between the interpreter's car and the track on which the work-train was approaching, and came upon the passing track directly in front of the train when it was only some six or eight feet from him. After striking and killing deceased the work-train stopped almost instantly. So quickly did it stop that deceased's body was taken from the track at a point only some twenty-six feet from where he had been struck, and directly in front of the cow-catcher upon the locomotive. In stopping the engineer reversed his engine and

the stop made was so sudden as to derail the gondola car.

Upon the trial of the case a stipulation was offered. This stipulation had been made and was signed both by counsel for plaintiff and counsel for defendant. It occurs in the record twice. It was offered for the first time by plaintiff for the purpose, as plaintiff stated, of "showing the use made of the work-train." It was offered by defendant for the purpose, as stated by defendant when offered, of "showing the work of the working crew on March 14, 1913, of which deceased was the timekeeper." No objections or exceptions were made by either party to the offering of this stipulation, nor to the verbal limitations made when offering it touching its probative effect. This stipulation, ommitting signatures of counsel and formal parts, which are conventional, reads thus:

"It is hereby agreed and stipulated by and between the parties hereto, that on the day that Walter Crecelius was killed, March 14, 1913, the crew of which Walter Crecelius was timekeeper, and of which William Metcalf was foreman, had been engaged in ballasting a temporary track along the side of the main line of defendant's railroad at Morley, Jones County, Iowa. That said temporary track was to be used when repairs and construction were completed as the main line for the passage of all trains while the grade of the regular main line was being reduced; said temporary track when finished to be used for the purpose of transporting trains carrying freight and passengers from the State of Iowa and from the other states, into and through the State of Iowa; while grade of main line track was being lowered. It is understood that by this stipulation defendant in nowise admits that at the time and place of the accident or the day of the accident defendant's train which is alleged to have killed Walter Crecelius, or plaintiff's intestate, Walter Crecelius, was engaged or employed in interstate commerce."

Notwithstanding this stipulation both plaintiff and defendant put in much testimony without objection

from the adverse side which supplemented, and in a sense contradicted, the stipulation as to the nature of the work which the gang of laborers was doing on the day deceased was killed. This contradiction goes to the fact whether this gang was on this day engaged *solely in constructing the temporary track,* or whether it was *both* engaged in constructing this temporary track *and in putting in new ties and steel upon the old main-line interstate track* of defendant. The testimony offered by plaintiff tended to show that this gang was engaged in performing labor upon both the old track and the new track, while that offered by defendant tended to show that the sole work on the day deceased was killed had been that of constructing the temporary track. This temporary track had never been used in interstate commerce. In fact, it had not been completed, and was not, except presumably at one end, joined or connected to the main interstate track at all. When completed it was intended to be used in both intrastate and interstate commerce, pending the lowering of the grade of the main line track, but at the time of deceased's death it was neither completed nor connected, nor had it ever been used in any sort of traffic or commerce.

Such further facts as may become pertinent in the course of the discussion will be set forth in our opinion in connection with that discussion.

I. The defendant's contentions in the last analysis are but three in number: (1) Do the facts in the case bring it within the purview of the Federal Employers' Liability Act of April 22, 1908 (35 U. S. Stat., p. 65, c. 149) as amended April 5, 1910 (36 U. S. Stat. p. 291, c. 143)? (2) does instruction five for plaintiff properly declare the correct rule for the diminution of damages under the Employers' Liability Act, when the person killed or injured has been guilty of contributory negligence? and (3) does instruction eleven for plaintiff set forth the correct measure of and the proper

method of determining damages, in cases under said act?

The first contention made is an exceedingly close and difficult one. It turns, as such questions always do, upon the facts. Much of the difficulty has been eliminated by a total disregard and con-sequential waiver of the stipulation made and offered, touching the nature of the work on which the gang for which plaintiff's decedent was timekeeper, was engaged on the day deceased was killed. Not only was there a total disregard of this stipulation, but much evidence was put in on both sides *without any objection,* both in corroboration and in contradiction of it. Moreover, both plaintiff and the trial court in express terms disregarded it by an instruction which is *not now here urged as error,* and defendant did the like in leaving the question of the nature of this work to the jury, instead of regarding it as a matter of law to be determined as such upon defendant's demurrer to the evidence. On cross-examination defendant asked a witness for plaintiff this question: "I believe you said these men were engaged in what kind of work at this time on this day?" To which the witness answered: "Building a temporary track *and repairing the old track."* This old track was conclusively shown to be the main-line track used by defendant in its interstate traffic. We conclude that the terms of the stipulation were waived, since upon the trial this stipulation was ignored *without objection* by the trial court and by counsel upon both sides. [People v. Holden, 28 Calif. 123; Hughes v. Jackson, 12 Md. 450; Givens v. Lawler, 9 Ala. 543; Gage v. Bank, 86 Ill. 371; Foster's Exrs. v. Dickerson, 64 Vt. 233.]

*Stipulation.*

*Interstate Commerce.*

Upon this phase of the question, it thus became through this evidence a question for the jury whether the gang for which deceased was acting as timekeeper was on the day he was killed repairing a railroad track used in interstate commerce. The jury found that this gang was so engaged, and as there was substantial

evidence to support this finding we cannot interfere. But, since deceased was concededly killed some thirty minutes or more after the gang in question had quit work for the day, was deceased, when killed by reason of the custom of performance and necessity of his labors, still himself engaged in performing an act so directly and immediately connected with his previous acts as a time-keeper as to make of it a part thereof, or a necessary incident thereto? [Erie Railroad Co. v. Welsh, 242 U. S. 303; Shanks v. Delaware, etc., Co., 239 U. S. 556; New York, etc., Co. v. Carr, 238 U. S. 260.] We are constrained to say that this question must also be answered in the affirmative.

The facts upon this phase of the case show that it was the duty of deceased as timekeeper of the gang in question to make out daily reports on the work-day just ended of the number of men at work, the nature of the work being done by them, the number of hours of labor done by each man, the amount of steel laid and the number of ties put in. These reports were sent by mail and by telegraph to the roadmaster of defendant at Marion, Iowa. The report which was mailed was a full report of the day's work, while the short telegraphic report was merely a resume thereof. It was shown to be the custom of deceased to make out these reports between 6:30 and 7:30 o'clock p. m. each evening. The report intended by him to be mailed was written on a typewriter, while the telegraphic report was written out with a pencil in longhand. Just a few minutes before he was killed, deceased had made out his report. Shortly afterwards, about the hour he was in the custom of sending this report, he left the car in which he had his desk, and with the statement that he "was going to send his message," went to the car occupied by the interpreter for the gang, remained there a minute or two, and then started across the passing-track toward the telegraph office. As he came onto the passing track he stopped in the middle thereof, apparently looking at a way-freight train which had stopped at the station, the engine of which was only

some ten feet away from him. While thus standing, and after he had stood in the middle of this track for some twenty-five seconds, he was run down and killed by the work-train then on its way to Marion, Iowa, the division point, apparently to "tie up" for the night. After the killing of deceased his daily telegraphic report was found on his desk; though on this point there is evidence that he sometimes prepared this report at the telegraph office. There is not in the record any countervailing proof whatever as to the object of deceased in crossing these tracks at the time he was killed, except that having relation to his having made out his report, the arrival of the customary time of sending same, and his own statement as to his intentions when he left his desk. We think upon this evidence, the question whether deceased was bound for the telegraph office to send a message in furtherance of his usual duties when he was' killed, became a question of fact to be resolved by the triers of fact, and not a question of law to be determined as such by this court. [Knorpp v. Wagner, 195 Mo. l. c. 662; State ex rel. v. Elliott, 157 Mo. l. c. 618; Finnegan v. Railroad, 224 Mo. l. c. 653; Linderman v. Carmin, 255 Mo. 62.]

The ultimate facts of this case then, as the trial jury was warranted in finding them from the substantial evidence adduced, ran thus: Deceased, on the day he was killed was working as a timekeeper for a gang of men engaged in repairing the main track of an interstate railroad (and in constructing a temporary track to be used while the grade of the main-line track was being lowered); after work hours for the gang of laborers, but at a time when the duties of deceased required him to make out and send to the roadmaster of the defendant a daily telegraphic report of the number of men engaged and the nature of the work done by the gang of which deceased was timekeeper, and after he had prepared his report, he was killed by an intrastate work-train, while he was crossing the tracks of defendant on his way to the telegraph office to wire in said report.

That deceased was guilty of contributory negligence as a matter of law, there can be no manner of doubt. For while, pursuant to the rule of law in such behalf, when the sufficiency of the evidence is brought in question by a demurrer thereto, we have recited the facts upon the view most favorable to plaintiff, the latter's own evidence conclusively shows that deceased came to his death through his own contributory negligence. If a cloud of witnesses are to be believed, defendant was itself free from negligence, but upon this point, there was a sharp conflict in the evidence, which was likewise to be resolved by the trial jury. We conclude, therefore, that at the time deceased met his death he was engaged in the performance of duties which were so closely connected with interstate commerce as to constitute a part thereof, within the purview of the Federal Employers' Liability Act.

In the late case of Pederson v. Delaware, Lackawanna & Western Railroad Co., 229 U. S. 146, plaintiff, an iron-worker, was injured while carrying some iron bolts from a tool-car to a bridge which formed a part of an interstate railroad, which bolts were to be used that night or early the next morning in repairing this bridge. It was held, nevertheless, that plaintiff was, when injured, so far engaged in duties so closely connected with interstate commerce as to be a part thereof and so as to bring him within the provisions of the Employers' Liability Act.

In the case of St. Louis Ry. Co. v. Seale, 229 U. S. 156, plaintiff's decedent, a yard clerk, in a division-point yard, was killed while on his way through the railroad yards to one of the tracks therein, to meet an interstate train, in order to check from the conductor's lists and make a record of the number and initials of the cars and to inspect the condition of the doors and seals thereof. In this case it was held that deceased was when killed engaged in performing duties so far connected with commerce between the States, as to make applicable the Employers' Liability Act. Other cases wherein the act was held to apply, which are not quite

so apposite, but which accentuate the distinction and shed light upon the principle involved, are: Johnson v. Great Northern Railroad Co., 102 C. C. A. 89; Freeman v. Powell, 144 S. W. 1033; Horton v. Oregon Ry. & Nav. Co., 72 Wash. 503; Grow v. Oregon Short Line R. Co., 138 Pac. 398; Eng. v. Southern Pac. Co., 210 Fed. 92; San Pedro, etc. Co. v. Davide, 210 Fed. 870; Norfolk & Western Ry. v. Earnest, 229 U. S. 114; North Carolina Railroad v. Zachary, 232 U. S. 248; New York Central Railroad v. Carr, 238 U. S. 260. Cases wherein the facts were said to exclude the application of the Employers' Liability Act, are Jackson v. Chicago M. & St. P. Ry. Co., 210 Fed. 495; Bennett v. Lehigh Valley Ry. Co., 197 Fed. 578; Shanks v. Delaware Ry., 239 U. S. 556; New York Central Ry. Co. v. White, 243 U. S. 188; Erie Railroad Co. v. Welsh, 242 U. S. 303; Bravis v. Chicago, M. & St. P. Ry. Co., 217 Fed. 234; Chicago etc. v. Steele, 108 N. E. 4; Jacoby v. Chicago, M. & St. P. Ry. Co., 161 N. W. 751. A comparison of the facts present in the Pederson case, and the Seale case, both supra, with the facts held in judgment in the Welsh case, and the Jacoby case, both supra, will we think clearly and inevitably serve to show the distinction existing and the fairly obvious line of demarcation which differentiates the cases wherein the act applies from the cases wherein it does not apply.

II. Defendant complains that instruction numbered five, given by the court *nisi*, is erroneous. This instruction reads thus:

"On the issue of 'contributory negligence' pleaded by the defendant the court instructs the jury that if you believe from the evidence that the defendant, acting through its servants and agents, was negligent as defined in plaintiff's preceding instructions numbered 2 and 3, and that such negligence contributed as a direct cause to the death of Walter Crecelius; and that Walter Crecelius was then and there in the exercise of ordinary and reasonable care under all the facts and circumstances

Instruction.

mentioned in evidence, then the said Walter Crecelius was not guilty of contributory negligence, and the jury would not be warranted in diminishing the damages assessed in plaintiff's favor—in the event of a verdict for the plaintiff; and if the jury believe from the evidence that the defendant was negligent in the way and manner mentioned in plaintiff's preceding instructions numbered two and three; and that such negligence, if any, contributed as a direct cause to the death of Walter Crecelius, then even if you should find and believe from the evidence that the deceased, Walter Crecelius, was guilty of contributory negligence, such finding and belief and such fact of contributory negligence would not authorize a verdict in favor of the defendant Railroad Company, but would only *authorize* that the damages assessed by you in favor of the plaintiff be diminished by the jury in proportion to the amount of negligence attributable to said Walter Crecelius.''

This contention we are of opinion must be sustained. For it will be noted that the instruction attacked does not require or command the jury in the event they find deceased to have been guilty of negligence directly contributing to his own death, to deduct from the total amount of damages (if any) sustained by plaintiff such sum as equals the proportion which they may find the contributory negligence of deceased bears to the whole causal negligence in the case; it merely "authorizes" the jury to make this deduction. We think this is error. [Blankenbaker v. St. L. & San F. Railroad Co., 187 S. W. l. c. 842.] The pertinent langauge of the Federal Employers' Liability Act, applicable to the contention presented, reads thus:

"The fact that the employee may have been guilty of contributory negligence shall not bar a recovery, *but the damages shall be diminished* by the jury in proportion to the amount of negligence attributable to such employee." [Sec. 3, Act of April 22, 1908, 35 U. S. Stat. p. 66, c. 149.] (Italics ours).

Interpreting this language the Supreme Court of

the United States in the case of Seaboard Air Line v. Tilghman, 237 U. S. 1. c. 501, said:

"It means, and can only mean, as this court has held, that, where the causal negligence is attributable partly to the carrier and partly to the injured employee, he shall not recover full damages, but only a diminished sum bearing the same relation to the full damages that the negligence attributable to the carrier bears to the negligence attributable to both; the purpose being to exclude from the recovery a proportional part of the damages corresponding to the employee's contribution to the total negligence. [Norfolk & Western Ry. v. Earnest, 229 U. S. 114, 122; Grand Trunk Western Ry. v. Lindsay, 233 U. S. 42, 49.]"

We are clearly of the opinion that the imperative command of the Federal statute requiring the jury to diminish the damages, in the mode stated, in the event that they find that the deceased was guilty of contributory negligence, was not conveyed to the triers of fact by the use of the mere permissive word "authorize." This word as here used means "to warrant; to justify; to furnish a ground for." [Webster's Dict.] It does not connote the idea that pursuant to the statute the *jury must so diminish the damages.* It merely permits the jury to do so, leaving it to the discretion of the jury whether they actually do so or not. The jury should have been told that even if they should find and believe from the evidence that said Crecelius was guilty of contributory negligence, such finding and belief, and such fact of contributory negligence, would not authorize a verdict in favor of the defendant, but would make it necessary for the jury to deduct from the total amount of damages, if any, which the jury might find plaintiff had sustained by the killing of said Crecelius, such sum as the jury might find to be equal to the proportion which the negligence attributable to said Crecelius bears to the causal negligence attributable to both Crecelius and the defendant. It follows that this contention must be sustained.

III.   In the brief of learned counsel for defendant it is urged that instruction eleven on the measure of damages does not advise the jury of the proper method of fixing damages under the Federal Employers' Liability Act.   Unfortunately, so far as our review of this question here is concerned, defendant did not in any manner mention this instruction in its motion for a new trial.   Defendant does complain in its motion for a new trial that the damages awarded are excessive, but if fails to keep that complaint alive in its brief, and so we are warranted in assuming that it has waived it.   Since, then, defendant waived one of these germane questions and never raised the other, we can review neither.

*Measure of Damages.*

It follows that the judgment of the trial court must be reversed and remanded for a new trial not inconsistent with what we have herein ruled.   Let this be done. *Graves, C. J., Bond* and *Woodson, JJ.,* concur; *Graves, C. J.,* in separate opinion, in which *Woodson J.,* joins; *Walker, J.,* dissents; *Blair* and *Williams, JJ.,* concur in paragraphs one and three, but dissent as to paragraph two and the result.

GRAVES, C. J.—I concur with the amended opinion of FARIS, J., filed in Banc, with one reservation, which I will state later.   That instruction numbered 5 for the plaintiff is erroneous, I have no doubt.   This instruction undertakes to tell the jury what they should do, under the terms of the Federal statute, in the event they found that deceased was guilty of negligence which contributed to his death.   It is an instruction which defines the duty of the jury under the statute. Instead of telling the jury that they must reduce the total damages suffered in the event there was found negligence upon the part of deceased, the instruction leaves it solely with the jurors as to whether they will or will not reduce the total damages.   As shown by FARIS, J., this is not the meaning of this statute.   If there was contributory negligence the total damages

*must* be reduced under the statute, and in the manner designated in the statute.

Nor is there substance in the claim that this instruction numbered 5 is mere non-direction and not misdirection. As an instruction it is a declaration of the meaning of this statute (Section 3 of the Federal Employer's Liability Act), and for that reason is a misdirection and not a non-direction of the jury. In other words, having in view the act under which the suit is brought, it undertakes to tell the jury what duty this law imposed upon the jury in the event contributory negligence was found. The instruction wrongfully states that duty, and is clearly a mis-direction upon a most vital issue in the case. So that upon this question I have had no trouble.

The question which has troubled me more, is whether or not there is any substantial evidence showing that the deceased was about his master's work at the time of the accident. But as the case should be reversed for the error in the instruction, *supra*, it may be this phase of the case can be strengthened upon retrial. With a reservation upon this point, I concur in the views expressed by FARIS, J., in the amended opinion filed in this court by him. *Woodson, J.,* concurs in these views.