CARL H. WRIGHT, Appellant, v. INTERURBAN RAILWAY COMPANY, Appellee.

CARRIERS: Interstate Commerce—Dismantling and Reconstructing Equipment. A workman, even though employed by an interstate common carrier, is not engaged in interstate commerce while employed in dismantling and reconstructing a room or station and the electrical equipment therein, when the room and equipment are not employed during the period of said work as an instrument of commerce. This is true even though said work is being done with the purpose in view of using the reconstructed room and equipment, immediately on the completion thereof, as an instrument of commerce.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

NOVEMBER 20, 1920.

THE plaintiff brings this action at law under the Federal Employers' Liability Act, to recover damages for personal injuries alleged to have been suffered by him by reason of the defendant's negligence. On trial to a jury, there was a directed verdict and judgment for the defendant, and the plaintiff appeals.—*Affirmed.*

*Samuel A. Anderson* and *J. E. Holmes,* for appellant.

*W. H. McHenry, A. B. Howland, C. R. Bennett,* and *C. Woodbridge,* for appellee.

WEAVER, C. J.—The defendant owns and operates an interurban electric railway extending from the city of Des Moines to the city of Colfax. At the intermediate town of Mitchellville, it maintains a station building, one room or distinct part of which is usually occupied by what is spoken of in the record as a "substation." In the substation, when in use, are electric wires, transformers, and other items of equipment employed in operating the road. The two main or primary wires so used enter the room at a point about 16 feet above the floor. In June, 1918, defendant undertook to reconstruct or make quite extensive changes in the substation. To accommodate that work, a portable substation was arranged in a car located on the railway track wholly outside of the building; the primary wires were cut off at or near the point where they entered the room, and provided with a disconnecting switch, which, when open, arrested the current, and enabled the employee to work with safety in all parts of the room. During all the period from June, 1918, until plaintiff was injured, in February, 1919, the substation room remained dismantled of its electrical equipment, and no use was made therein of the current. It appears, however, to have been the custom of the foreman to open the switch after the day's work was ended, and to disconnect it again each morning before work was resumed. During all the time this work of reconstruction was in progress, no part of the work of operating

the railway or controlling the movement of cars or trains therein was carried in or through said substation, but all work and business of that nature was done and carried on in and through the temporary or portable substation alone, by employees other than plaintiff. For a year or more, plaintiff had been employed by the defendant at other places on its line, when, early in February, 1919, he was sent by defendant to Mitchellville, to help in the completion of the work being done on the substation. A few days later, he was assisting in putting up an iron "pipe rack," bolting it to the inner wall of the building, at or near the place of the disconnecting switch above mentioned. It was yet early in the morning, and it so happened that the foreman, contrary to his custom, had failed to disconnect the switch, and plaintiff, not noticing the failure, undertook to climb to his place of work on the pipe rack, thus coming in contact with some wire or other conductor heavily charged with electricity, and was very severely injured.

In this action, plaintiff charges the defendant with negligence in failing to open the switch in the morning in question, and in ordering or directing him to work while the current was on, and without any warning to plaintiff of the fact. Plaintiff further alleges that, at the time of his injury, the railway company was engaged in the business of interstate commerce, and that the work in which he was employed by the defendant was a part of such business of interstate commerce, and that he is, therefore, entitled to maintain this action under the Federal Employers' Liability Act (U. S. Comp. St. Secs. 8657-8665):

The defendant denies any negligence on its part: denies that plaintiff was employed in any work or service of interstate commerce; and pleads contributory negligence and assumption of risk.

I.   Was plaintiff, at the time of his injury, engaged in work of interstate commerce? It is stated in the record that the defendant is a common carrier of freights and passengers on its line between Des Moines and Colfax, and at times receives freights at its stations consigned to points

outside of the state of Iowa, and freights brought into the state by other carriers and delivered to it for carriage to stations on its own line; and that, in rare instances, it has sold passenger tickets to points outside of the state; but that it neither owns nor operates cars or trains outside of or beyond the boundaries of the state of Iowa.

Upon the question whether a given act or employment partakes of the character of interstate commerce, the Supreme Court of the United States is the court of last resort. It has dealt with this subject on several occasions, and has declared that the test is to be found in the answer to the question:

"Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?" *Shanks v. Delaware, L. & W. R. Co.*, 239 U. S. 556, 559.

Without attempting to enlarge upon this definition, can it be said that, *at the time* when this plaintiff was injured, he was engaged in a work so closely related to interstate commerce as to be practically a part of it?

Upon both principle and precedent we are of the opinion that this inquiry must be answered in the negative. It is doubtless true that this statute is intended for the protection and benefit of laborers in a hazardous employment of the highest importance to the public, and as such, it should be liberally construed by the courts, to promote its beneficent purpose. The Federal court has, in fact, so construed it, and the test which it applies in the above quotation from the *Shanks* case is evidence of a purpose to make the statute as effective as its terms will warrant.

In the record now before us, it cannot fairly be said that, when injured, plaintiff was engaged in work having any close or immediate relation to interstate commerce, or even to commerce of an intrastate character. The substation in which plaintiff was then at work was not being used for any purpose in connection with the work of commerce, interstate or intrastate. It had been closed for the purpose of installing new transformers, and perhaps making other

changes in its equipment; and, for the time being, the elec-
trical machinery and equipment in actual use at that sta-
tion were admittedly located in a box car or portable
station outside of the building. It is true that the work
being done in the building, and in which plaintiff was em-
ployed, was for the purpose of fitting the room to be
reoccupied as a substation, and the transformers and other
equipment which the employees were putting in place were
intended to be used by the company in its business of oper-
ating its line of railroad as a carrier of freight and passen-
gers; but, to repeat, *at that time* it was not in such use,
and the room and its contents were not instruments of com-
merce, nor was the work being done therein so closely re-
lated to interstate commerce as to be practically a part of it.

Quite in point, as recognizing this distinction, is the
case of *Shanks v. Delaware, L. & W. R. Co.*, 239 U. S. 556,
above cited. There, the plaintiff was employed in the com-
pany's shop, in which its locomotives used in both inter-
state and intrastate commerce were repaired. At the time
of his injury, he was engaged solely in taking down and
putting in a new location an overhead countershaft, through
which power was transmitted to machinery used in the
repair work; and it was held that he did not come within
the protection of the statute. The court, having stated the
test as we have before quoted it, proceeds to say that:

"Shanks was not employed in interstate transportation,
or in repairing or keeping in usable condition a roadbed,
bridge, engine, car, or other instrument then in use in such
transportation. What he was doing was altering the loca-
tion of a fixture in a machine shop. The connection between
the fixture and interstate transportation was remote at
best, for the only function of the fixture was to communi-
cate power to machinery used in repairing parts of engines,
some of which were used in such transportation."

To the same general purport is the case of *Delaware,
L. & W. R. Co. v. Yurkonis*, 238 U. S. 439; *Minneapolis & St.
L. R. Co. v. Winters*, 242 U. S. 353; *Illinois Cent. R. Co. v.
Cousins*, 241 U. S. 641. See, also, discussion by this court

in *Smith v. Interurban R. Co.,* 186 Iowa 1045.

Not all servants and employees of common carriers are necessarily or at all times engaged in interstate commerce. The statute imposing liability in cases of this kind limits it to damages to "any person suffering injury *while* he is employed by such carrier *in such commerce"* (Comp. Stat. 1918, Section 8657) ; and, in giving this provision practical effect, by making it broadly applicable to all cases where the employee *"at the time of his injury* was engaged in interstate transportation, or in work so closely related to it as to be practically a part of it," the courts have gone as far as is reasonably possible, to extend its benefits to all who, by any fair interpretation, can be brought within the scope of the expressed legislative intention.

At the time the appellant in this case was injured, he was not engaged in work having any immediate connection with transportation of articles of commerce. True, the room in which he worked had formerly been occupied as a substation on the defendant's road, and had contained an equipment of machinery and electrical devices of various kinds, which was used in the operation of the road. But this use of the room and equipment ceased or was suspended in June, 1918, and from then until plaintiff was injured, a period of 8 or 9 months, it was occupied and used by the plaintiff and other mechanics or workmen who were employed in a reconstruction of the place and installment of new transformers, with the intention of restoring it to use as a substation when the work was completed. During this period, the practical operation of the road was conducted entirely through the portable station, in the management, control, and operation of which plaintiff had no part. It was under such conditions that the accident occurred, in a manner already sufficiently described. It is the theory of the appellant that his case comes within the rule applied in *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146; *Philadelphia, B. & W. R. Co. v. Smith,* 250 U. S. 101; *Ross v. Sheldon,* 176 Iowa 618; and others of the class of which these are representative. None of these is quite in point,

and none at all inconsistent with the decisions in *Shanks v. Delaware, L. & W. R. Co.,* supra; *Delaware, L. & W. R. Co. v. Yurkonis,* 238 U. S. 439; *Minneapolis & St. L. R. Co. v. Winters,* 242 U. S. 353; *Illinois Cent. R. Co. v. Behrens,* 233 U. S. 473; and other similar holdings.

In all the cases where the carrier has been held liable, the fact has been emphasized that, *at the time* of the employee's injury, he was admittedly engaged in work of interstate transportation, or in work so intimately and directly connected therewith as to be practically a part of it; while in cases where a recovery has been disallowed, such intimate relation does not appear. Had the plaintiff in this case been employed to shingle the defendant's passenger station, or to mend a window in the substation, and in so doing had come in contact with a live electric wire, and thereby had been injured, whatever remedy he might have had, his counsel would hardly contend that the injured man could recover damages under the Federal statute, on the theory that the service in which he was employed at the time of his hurt was in the nature of interstate commerce, even though it be true that suitable stations and substations are conveniences or instrumentalities which have a proper place in the business of transporting articles of commerce. Or, to use a somewhat more pertinent illustration, let us suppose that defendant, being the owner of an interurban line between Des Moines and Colfax, and finding its business outgrowing its capacity to handle it, lays a new track between its terminals, and erects a new substation at Mitchellville; but, before the new line has been fully completed or opened for business, the plaintiff, being employed in equipping the new substation, is injured, substantially as shown in this action. In such case, the new line, while intended for use in the transportation of articles of commerce, has not been so employed, and not until it has been thus utilized does its owner become charged with the duties or exposed to the liabilities of a carrier of commerce.

When plaintiff was injured, and for months prior thereto, the substation room at Mitchellville had been practically

eliminated from the defendant's railway system. It had no part or share in the railway business, and the men employed therein were mechanics and laborers, without even remote connection with interstate commerce. In our judgment, the trial court did not err in ruling that plaintiff failed to show any right of action under the Federal Employers' Liability Statute.

Plaintiff having asserted no claim for a recovery except under the Federal statute, it is unnecessary for us to consider or decide whether, upon any other theory of the case, the defendant would have been entitled to a directed verdict. For the reasons stated, the judgment below is— *Affirmed.*

LADD, STEVENS, and ARTHUR, JJ., concur.