ALICE M. WALLACE, ADMINISTRATRIX, vs. THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, New Haven, June Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

Whether an injured employee of a common carrier is entitled to the relief provided by the Federal Employers Liability Act, depends upon whether at the time of the injury he was engaged in interstate transportation, or in work so closely related to it as to be practically a part of it.

A person cannot be said to be employed in interstate commerce merely because he is engaged in constructing instrumentalities for use in carrying it on; but the work of maintenance and repair of such instrumentalities, after their adoption and use in interstate transportation, is ordinarily regarded as a part of interstate commerce.

Even repair or maintenance work may operate to withdraw such instrumentalities from interstate commerce by reason of the length of time involved, as in the present case, the test being whether or not the withdrawal is something more than merely temporary.

The defendant, having two ashpits used for cleaning engines employed in inter- and intra-state commerce, and a huge crane, operating on rails, used for removing ashes from the pits, constructed another

ashpit and made plans for the construction of still a fourth pit. To this end it greatly enlarged the crane to enable it to do the increased work, changed the crane rails, made a new alignment of poles and electric wires, and relocated its water system for washing out the pits. The crane was out of use from December 10th to the following January 17th. The electric wires when changed were found to be too low, and the plaintiff's decedent was directed to restring them, and while so occupied on January 11th, suffered the injury from which he died. *Held* that the work involved was new construction work rather than that of repair; and that in any event there was more than a temporary withdrawal of the instrumentalities in question from interstate commerce, and hence the decedent was not engaged in such commerce when injured.

No hard and fast rule can be devised by the application of which a case can be placed automatically in the "new-construction" column, or in the "repair and maintenance" column; each case must be decided upon its own facts.

Where all the facts essential to the determination of the question whether an employee is engaged in new construction work or in repair work, are undisputed, it is the duty of the trial court to decide it as matter of law, and not submit the issue to the jury.

The submission to the jury of an issue which the trial court itself should have decided, is harmless if they, by their verdict, reach the correct result.

Argued June 7th—decided July 27th, 1923.

ACTION to recover damages under the Federal Employers Liability Act for personal injuries resulting in the death of the plaintiff's intestate and alleged to have been caused by the negligence of the defendant, brought to the Superior Court in New Haven County and tried to the jury before *Banks, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *No error.*

*Robert R. Rosan,* for the appellant (plaintiff).

*James W. Carpenter,* for the appellee (defendant).

WHEELER, C. J. The plaintiff seeks, under the remedy provided by the Federal Employers Liability Act (8 U. S. Comp. Stat. [1916] §§ 8657–65), to recover

damages for the injury causing the death of her decedent, Wallace. An essential element of this cause of action is proof that both the defendant and Wallace were engaged, at the time of the injury to Wallace, in interstate commerce. The court charged the jury upon the question of whether or not Wallace was engaged in interstate commerce at the time of his death, as follows: "If you find that the evidence supports this claim, then you must find that Wallace at the time of his death was not engaged in interstate commerce, and the plaintiff cannot maintain this present action. The claim of the plaintiff, on the other hand, is that this work was simply repair work, maintenance rather than constructive work, and that the crane was not withdrawn from service, but its use temporarily and necessarily suspended while this work was being done. If you should find that the evidence supports this claim, then you would be justified in finding that Wallace was engaged in interstate commerce at the time of his death. The difference between construction and maintenance work is sometimes difficult to draw, and can be said to be one of degree rather than one of real difference. I am submitting to you in this case as a question of fact whether, under all of the circumstances disclosed by the evidence in this case, all of which I have not attempted to refer to, but which you will have in mind, whether, upon the facts as to the character of his work at the time of his death, Wallace was actually engaged in work so closely related to interstate commerce as to be practically part of it."

The trial court properly instructed the jury as to the test, laid down by the Supreme Court of the United States, to determine whether an employee was at the time of his injury engaged in interstate commerce. That test, as stated in *Chicago, B. & Q. R. Co.* v. *Huntington*, 241 U. S. 177, 36 Sup. Ct. 517, and followed by

us in *Gruszewsky* v. *Director General of Railroads*, 96 Conn. 119, 121, 113 Atl. 160, was an affirmative answer to the question: "Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?" Its further instruction, that if the work was new construction work, the operation was not then interstate commerce, but that if it was repair or maintenance work, where the crane was temporarily withdrawn from such service until the work was done, it was interstate commerce, was correct. The court left to the jury the issue of whether the work was new construction or repair or maintenance work, and instructed the jury that as it found this issue, it should determine the ultimate issue whether the defendant and Wallace at the time of his injury were engaged in interstate commerce or not. The submission to the jury of this issue in this respect is one of the errors complained of and was, we think, erroneous.

Since the facts necessary to this determination were not in dispute, we think it was the duty of the court to have itself determined whether Wallace was engaged in new construction work, or in repair work, and to have then instructed the jury definitely, as matter of law, whether or not the defendant and Wallace were engaged in interstate commerce at the time of his injury. Notwithstanding the error of the trial court, the plaintiff should not be accorded a new trial, since the verdict indicates that the jury must have reached the same conclusion upon this point that they would have reached had they been instructed correctly. We shall endeavor to make clear our conclusion.

The trial court was quite right in its observation that the line between construction and repair or maintenance work was sometimes difficult to draw, and in reality was one of degree rather than of real difference.

Until the facts are before the trier in clear relief, he cannot draw this distinction with anything approaching certainty, and even then close cases will be especially hard to classify. The facts, upon which the parties were not in dispute, were these: For a long time the defendant had two ashpits one hundred and fifty feet in length, running practically north and south and lying between and below the rails of their respective tracks. These tracks were used by the defendant's locomotives for the purpose of cleaning their fires, dumping and depositing their ashes, and washing their ashpans. Of the locomotives dropping ashes into these two ashpits, most of them were used in interstate commerce, but some were used in intrastate commerce. In order to remove the ashes from these pits the defendant used a Gantry crane—a huge steel structure weighing many tons. When in operation the Gantry crane moved upon rails, called Gantry crane rails, parallel to the ashpits, and was propelled by electricity obtained from three wires which were suspended from iron brackets attached to wooden poles along one side of the ashpit. Because of the increase of its business, defendant determined to construct one additional ashpit to the east of the old ones, and eventually to construct another ashpit to the west of the old ones. In order to remove ashes from this new pit, it was necessary to widen the Gantry crane thirty feet, to relocate the Gantry rails, to the east and west respectively of the old ashpits, and to relocate the power-poles and the water system for washing out the pits to the east of the enlarged facilities. On December 10th, 1920, defendant extended the old Gantry rails to the south twenty or thirty feet and ran the Gantry crane thereon for the purpose of reconstructing it pursuant to the plan, and de-energized and removed the power-wires from the poles. During December defendant moved

the power-poles some twenty feet to the east of the old location, and the Gantry rails about twenty feet east and west respectively of their former position. From December 20th to January 3d, 1921, the Berlin Construction Company was engaged in behalf of the defendant in enlarging the Gantry crane. They cut the overhead steel bridge work in two, and separated the several sections by moving them to the east and west about thirty feet, and between these sections they installed an entirely new steel overhead section. During December and January, defendant constructed the new pit track, being about one hundred and fifty feet long by four feet wide and five deep, having its walls made of concrete two feet thick and its bottom of granite paving-blocks. This was completed January 11th or 12th, but it did not harden until about January 17th. During the first part of January the old power-wires were reattached to the relocated old poles in a similar manner as before, and during January the water-pipe system was relocated. On January 10th the Gantry crane was being tested by the defendant's electrical inspection department, when the relocated power-wires were found to be too low, and Wallace was assigned to the task of raising the wires, and while so at work on January 11th, suffered the injury from which he died. The Gantry crane was not used in ash-pit operation from December 10th to January 17th, 1921. The only new parts used in the work of reconstruction and relocation were two longer I beams and some new brackets. The only new construction was that of the new ashpit. The old ashpits were continued in use by the defendant by means of an auxiliary hoist for loading, operated by steam and mounted on a specially constructed flat car. These facts, and the claims thereon, were not in controversy except as to the inference, whether or not the defendant and Wal-

lace were engaged in interstate commerce when Wallace suffered his injury.

No hard and fast rule can be devised by applying which we can automatically place a given case in the new construction column, or in the repair and maintenance column. Each case must be decided upon its own facts. Some will be so clear as to classify themselves, but the majority of the contested cases will range themselves not far from the border line between these two classes of cases. We must be guided by and follow the decisions of the Supreme Court of the United States, or of the Circuit Courts of Appeals wherever the Supreme Court has not spoken. Where they have indicated certain classes of cases as outside interstate commerce, we must examine the facts of the case before us to see if it falls within or without these classes. So far, these courts have given us few guiding suggestions; perhaps the subject admits of nothing further. The work of instrumentalities which have not as yet become a part of such commerce, is not interstate commerce, but only "the work of maintaining them in proper condition after they have become such instrumentalities" of commerce, "and during their use as such." *Pedersen* v. *Delaware, L. & W. R. Co.*, 229 U. S. 146, 152, 33 Sup. Ct. 648. Where the connection between interstate commerce and the thing being done is remote, it will be held to be unconnected with interstate commerce.

In *Shanks* v. *Delaware, L. & W. R. Co.*, 239 U. S. 556, 558, 560, 36 Sup. Ct. 188, the Supreme Court says: "What he was doing was altering the location of a fixture in a machine shop. The connection between the fixture and interstate transportation was remote at best, for the only function of the fixture was to communicate power to machinery used in repairing parts of engines some of which were used in such transporta-

tion. This, we think, demonstrates that the work in which Shanks was engaged, like that of the coal miner in the *Yurkonis* case [*Delaware, L. & W. R. Co.* v. *Yurkonis,* 238 U. S. 439, 35 Sup. Ct. 902], was too remote from interstate transportation to be practically a part of it, and therefore that he was not employed in interstate commerce within the meaning of the Employers Liability Act." Evidently with the same thought, the court says, in *Industrial Commission* v. *Davis,* 259 U. S. 182, 187, 42 Sup. Ct. 489: "Commerce is movement, and the work and general repair shops of a railroad, and those employed in them, are accessories to that movement, indeed, are necessary to it, but so are all attached to the railroad company, official, clerical or mechanical." See, also, *Chicago, B. & Q.R. Co.* v. *Harrington,* 241 U. S. 177, 36 Sup. Ct. 517.

One of the factors to be considered in each case is the length of time that the repair work or maintenance takes. If it withdraws the instrumentality in use in commerce from such use for an unreasonable time, the instrumentality can no longer be held to be engaged in interstate commerce. What is an unreasonable time we can only determine upon a weighing of all the facts of a case. The test of whether a condition is reasonable or unreasonable is not infrequent in the law; it is never a definite standard, but it is the best courts have found. This factor was presented in an illuminating way in *Industrial Commission* v. *Davis,* 259 U. S. 182, 187, 42 Sup. Ct. 489, where the court said: "But equipment out of use, withdrawn for repairs, may or may not partake of that character according to circumstances, and among the circumstances is the time taken for repairs—the duration of the withdrawal from use. Illustrations readily occur. There may be only a placement upon a sidetrack or in a roundhouse—the interruption of actual use, and the return to it, being of varying lengths of

time, or there may be a removal to the repair and con-struction shops, a definite withdrawal from service and placement in new relations; the relations of a work shop, its employments and employees having cause in the movements that constitute commerce but not be-ing immediate to it." The case was one in which the petitioner had suffered injury while working in the general repair shop of a railroad upon a locomotive which had, before being repaired, been in interstate commerce, and was destined when repaired to con-tinue in that service. The same principle is applicable to the repair of immovable facilities of interstate com-merce. We must also note the difference between re-pairs of objects movable in character, and those which are immovable or partaking of that nature. The im-movable object under repair will be held to be with-drawn from commerce less readily than the movable object. For example, the railroad bridge less readily than the locomotive.

The court in *Industrial Commission* v. *Davis, supra,* cites with approval *Law* v. *Illinois Central R. Co.,* 208 Fed. Rep. 869, 872, in which case the Circuit Court of Appeals thus holds: "In the instant case the engine was in the shop for what is called 'roundhouse over-hauling.' It had been dismantled at least twenty-one days before the accident. Up to the time it was taken to the shop it was actually in use in interstate com-merce. It was destined for return thereto upon com-pletion of repairs. It actually was so returned the day following the accident. . . . Under the existing facts, can the length of time required for the repairs change the legal situation? If so, where is the line to be drawn? How many days temporary withdrawal would suffice to take it out of the purview of the Act? And is it material whether the repairs take place in a round-house or in general shops? Is not the test whether the

withdrawal is merely temporary in character?" In *Chicago, K. & S. Ry. Co.* v. *Kindlesparker*, 234 Fed. Rep. 1, 3, the Circuit Court of Appeals held that an engine under repair for seventy-nine days in a repair shop was still engaged in interstate commerce, but the Supreme Court reversed the decision on the authority of *Minneapolis & St. L. R. Co.* v. *Winters*, 242 U. S. 353, 37 Sup. Ct. 170. It sufficiently appears that *Industrial Commission* v. *Davis* was reversed because the period of repair was an unreasonable time, constituting a withdrawal of the engine from interstate commerce.

We are not required in the instant case to decide whether the Iowa Supreme Court is entirely correct when it says: "The trend of the cases thus far decided indicates that labor and betterment upon an interstate line of railway will not be deemed as new construction work, unless it is clearly such. That is to say, mere doubt will be resolved in favor of 'repair and maintenance.'" *Rose* v. *Sheldon*, 176 Iowa, 618, 624, 154 N. W. 499. It, however, must be granted that such a rule would tend to lessen the difficulties of triers of causes under this Act, and probably make it easier for counsel to advise clients, and as a consequence lessen the number of causes to be brought under the Act.

Turning to the circumstances of the instant case, we find that the instrumentalities and facilities involved in this work before the process of reconstruction began, had been a part of interstate commerce. The shifting of the poles and the restringing of the wires upon the old or upon new cross-arms, if this work stood alone, might, we think, have fairly fallen under the head of repairs. But the widening of this huge crane by thirty feet by the insertion of two I beams, and for the purpose of doing the work not only of the two old ashpits but of the newly-constructed ashpit, and its reconstruction so that it could do not only the work of the three ash-

pits but the work of another, projected ashpit, stamps this work, by the nature of the work and the purpose of its use, as new construction. And when the reconstruction of the crane is considered in connection with the change in the Gantry rail track, the new alignment of poles, the new stringing of wires with some new cross-arms, the newly-located water system and the new ashpit, we think that all of this work taken together must be regarded as new construction.

Upon another ground it cannot be considered that such repair work or maintenance continued the Gantry crane and all of its accessories in this work in interstate commerce during the period after its present use had ceased and the process of reconstruction was being carried on. The Gantry crane went out of use December 10th and it returned to the uses of interstate commerce on the following January 17th. This was not in our judgment a temporary withdrawal. Commerce, as the Supreme Court has said, is movement, and the cessation of the use of these facilities for five weeks while a work of reconstruction of so large proportions was in progress cannot be held to be a temporary withdrawal. On the contrary, it was such a withdrawal as took these facilities out of interstate commerce during the period of reconstruction. As a consequence, Wallace was not engaged in interstate commerce while at work in restringing the power wires. The substitution of steam power to empty the old ashpits during the period of reconstruction has no part in the disposition of this case, since Wallace did not meet his injury while at work upon this steam hoist or its accessories or the old ashpits.

The court should have instructed the jury that the work upon which Wallace was engaged when injured was construction, and not repair or maintenance work, and hence was not interstate commerce. The verdict

of the jury in favor of the defendant reached the same result, which must have been reached had they been instructed in accordance with the law; therefore the error of the trial court was harmless.

There is no error.

In this opinion the other judges concurred.