## CLEMENCE v. HUDSON & M. RY. CO.

(Circuit Court of Appeals, Second Circuit.
April 19, 1926.)

No. 312.

**1. Commerce ⟨⟩27(8)—Employee, killed while cleaning débris in shaft to be used as emergency exit from interstate subterranean tube, and wherein drain pipes leading from main track were laid, held engaged in interstate commerce (Federal Employers' Liability Act [Comp. St. §§ 8657–8665]).**

Employee killed while cleaning débris in shaft leading from subterranean tube of interstate railroad, to be used as emergency exit, drain pipes also being constructed in shaft for carrying water off main tracks, *held* engaged in interstate commerce, so as to come under federal Employers' Liability Act (Comp. St. §§ 8657–8665).

**2. Death ⟨⟩103(2)—Whether employee died from electric shock while engaged in work held question for jury (Federal Employers' Liability Act [Comp. St. §§ 8657–8665]).**

In action under federal Employers' Liability Act (Comp. St. §§ 8657–8665) for death of employee when cleaning débris in shaft, to be used as emergency exit from subterranean tube, evidence *held* sufficient for jury on question whether employee died from electric shock received while engaged in such work.

**3. Courts ⟨⟩406(2)—New trial ⟨⟩164—Trial judge, on setting aside verdict, had no authority to direct verdict of his own and enter judgment, and Circuit Court of Appeals can only reverse judgment and direct new trial.**

Trial judge, after setting aside verdict, had no authority to direct verdict of his own and enter judgment thereon, and Circuit Court of Appeals can do no more than reverse such judgment and direct new trial.

**4. Courts ⟨⟩406(1)—Circuit Court of Appeals on writ of error from trial court's action setting aside verdict and directing verdict of his own, with judgment thereon, cannot review order setting aside verdict.**

On writ of error from action of trial judge in setting aside verdict and directing verdict of his own, and entering judgment thereon, Circuit Court of Appeals is without power to review order setting aside verdict, since order granting or denying new trial is not reviewable by writ of error, even though it proceed in fact from errors of law.

Manton, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Southern District of New York.

Action by Juliana Clemence, as administratrix of William Clemence, deceased, against the Hudson & Manhattan Railway Company. Verdict for plaintiff was set aside, and judgment entered for defendant (8 F.[2d] 317), and plaintiff brings error. Reversed, and new trial ordered.

11 F.(2d)—58

Writ of error to a judgment of the District Court for the Southern District of New York, dismissing a complaint at law for the death of the plaintiff's intestate, alleged to have been due to the negligence of the defendant.

The complaint was under the federal Employers' Liability Act (Comp. St. §§ 8657–8665), and alleged: That the decedent was an employee of the defendant, a road engaged in interstate commerce, and that he was himself so engaged at the time of his death. That while at work on August 24, 1924, in a shaft leading into the defendant's interstate tube, he died from an electric shock, caused, among other things, by the defendant's failure to provide him with a reasonably safe place to work. The case was tried to a jury, which rendered a verdict of $21,000. The defendant had moved for a nonsuit before verdict, which the court denied, and entered judgment on the verdict on July 27, 1925. On October 30, 1925, but within the term, according to the rules of the District Court for the Southern District of New York, the court set aside the verdict, directed a verdict for the defendant, and entered judgment upon it, dismissing the complaint on the merits. It was to this judgment that the plaintiff took out the writ.

The facts were as follows:

The decedent was employed as one of several men to clean up rubbish along the tracks of the defendant's subterranean tube, which led from the city of New York to Jersey City. On the Manhattan side of the tube there was a shaft from the tracks to the street, close to the Hudson river. The lower part of this shaft was in two separate legs, running from the track upwards for about 40 feet and meeting in a single chamber, which led in a single shaft to the street; both legs and the upper shaft being used for ventilation of the tubes and to carry drain pipes. The defendant decided to use one of the legs and the upper shaft for an emergency exit for passengers, and to do so it removed the drain pipes from the selected leg and put a spiral stairway in its place to the single chamber and a straight lead of steps to the street. The result was to use the other leg for the drain pipes and for a single ventilating shaft, and the upper chamber for these purposes and for the exit as well. The work had been substantially done. The drain pipes had been moved into the ventilating leg; the treads of the stairway, both spiral and straight, had been completed, except for some widening at the top of the straight lead; and much of the railing was in place, though not

all was completed. Metal conduits for the lighting wires were installed, though the wires did not run in them, but were strapped along the side. There was metal work yet to be done to separate the exhaust shaft of the upper chamber from the steps. The ventilation fan had not been in operation during the progress of the work.

The decedent was ordered to go to the upper chamber and clean up rubbish which had accumulated during the construction. This consisted of boards, pieces of sheet iron, and scraps of old wire. In order to dump this to the tracks, he took off a piece of sheet iron about 2x5 feet in size, which covered the ventilating leg, and tried to lower it through the leg itself. While so handling it, he gave a cry, fell over, and died almost at once. The plaintiff's theory was that the bottom of the iron sheet had struck a live wire, uninsulated, and that the decedent had received a shock which killed him.

During the progress of the work it had been lighted by clusters fed by temporary feed wires, tapped into a tap box at the track level, and run up one of the legs to the upper chamber. The wire men had taken down the clusters the day before and removed some of the wire. The old lead running up the leg had not been removed, and one witness swore that in the chamber some of it was hanging down to the floor, with a bare uninsulated end. All said that on the floor lay a coil of the old cut wire, part of the rubbish to be removed. The chief question was whether this could have contained live wires, and whether the decedent could have got a shock from them. Two of the defendant's employees said that they had seen the connection of the feed wire before the accident, and one of them that he had himself disconnected it and laid it back for a distance of some feet. Two more, one no longer in the defendant's employ, said that they had seen it an hour or more after the accident, and they described it in the same way. All the defendant's witnesses said that the coil of wires was loose and not connected with the old lead.

The plaintiff's case rested upon the evidence of two of the defendant's employees, who worked with the decedent. One was in the chamber, and said that he could see the decedent. He described how the sheet of iron touched the loose wires, and how he at once fell over; he did not say that the end of the old lead hung from the wall. The other swarmed up a ladder in the ventilating leg after the decedent had fallen, and while emerging said that he had got a shock himself when about two feet from the decedent;

it was he, also, who testified that the old lead hung from the wall. He had twice before denied that he had received any such shock.

At the inquest the coroner's physician, who examined the decedent's body, certified that he had died of coronary sclerosis, and that he found no burns or other evidences of shock upon his body. In answer, the plaintiff proved that no autopsy was had, that the examination was superficial, and that a man may die of electric shock without evidence of burns, especially if his hands were dirty and black, as were the decedent's at the time.

The defendant successfully argued in the court below that the plaintiff was not engaged in interstate commerce, and that there was no sufficient evidence to justify a verdict that he came to his death by an electric shock.

John C. Robinson, of New York City (Morris A. Wainger, of New York City, of counsel), for plaintiff in error.

Goldthwaite H. Dorr, R. C. Goodale, and A. O. Dawson, all of New York City, for defendant in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] The proposed exit in which the decedent was working was not wholly completed, but it was entirely capable of the use for which it was intended; that is to say, as an emergency exit. There was to be no formal opening of it to the public, who were indeed not to use it at all, except on possible occasions, when the usual exits, remote from this, should become inaccessible. It was therefore as much in use as it ever was to be, as much so as when the railings were completed and the steps widened at the top, which were the only substantial changes that must be made to complete the work. To clear the landing or floor of the upper chamber of the rubbish which had accumulated during construction was as much to clear one of the defendant's exits as though it had incumbered a regular passageway at a station. Therefore we think the cases inapplicable which hold that the manufacture, repair, or adjustment of a tool or apparatus is not interstate commerce, when it has been removed from employment or has not yet been delivered to the carrier. Shanks v. D., L. & W. R. R. Co., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; Minn., etc., R. R. v. Winters, 242 U. S. 353, 37 S. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54; Industrial Commission v. Davis, 259 U. S. 182, 42 S. Ct. 489, 66 L. Ed. 888. Equally inapplicable

are cases such as Raymond v. Chicago, M. & St. P. R. R., 243 U. S. 43, 37 S. Ct. 268, 61 L. Ed. 583, and N. Y. Cent. R. R. Co. v. White, 243 U. S. 188, 37 S. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629, where the employee was at work upon a cut-off or tunnel, which had not yet gone into operation. These considerations led to the result in Wallace v. N. Y., N. H. & H. R. R., 99 Conn. 404, 121 A. 878, and Seaver v. Payne, 198 App. Div. 423, 190 N. Y. S. 724, affirmed 234 N. Y. 590, 138 N. E. 458. We do not suppose it will be argued that, had the decedent been employed in cleaning up the right of way itself he would not have been engaged in interstate commerce.

Our own decision in Hudson & Manhattan Co. v. Iorio, 239 F. 855, 152 C. C. A. 641, does not rule the case at bar. The rails being moved were to be held in reserve against possible need. Now it is true that an emergency exit is in some sense also held in reserve, but no more than an unoccupied siding, an extra ticket window, or an empty freighthouse. Parts of a railway's trackage and structures do not, as we understand it, fall out of interstate commerce whenever they are not being used, at least not when the only possible use of them must be interstate. As well might one say that the main tracks themselves were in use only when trains passed over them.

There is, besides, another ground on which jurisdiction may depend. Although the exhaust fan had not been running pending the changes, the drain pipes had been shifted and were carrying off water. The shaft was therefore a part of the necessary equipment for the main tracks, which must be kept dry. While it was not, indeed, essential to their operation that the chamber should be cleared of rubbish, it was a reasonable requirement, since access to them was made easier. It would be a crabbed doctrine to deny any relation between the drain pipes and the structures through which they ran.

[2] We think that there was evidence to go to the jury upon whether the decedent died by an electric shock. Judge Hough and I do not in fact believe that any of the coil of wire at the bottom of the chamber was live, and a judge would have been justified in saying so to the jury. It seems to us pretty clear that the main lead had been cut, and Latwis' testimony as to a shock was badly impeached by his earlier statements. Moreover, Belske swore to no hanging wire leading into the coil, without which we cannot see how there could have been any connection with the current, even if the old lead had not been disconnected at the tap box. That lead came up a separate leg of the shaft from the new temporary wiring, which under the only evidence was eight feet away. Besides, we cannot see how the old lead could get current from the new, even had they touched.

Nevertheless, it is true that, if the old lead was disconnected only after the accident, and if it hung down and into the coil, there would have been a current upon making a circuit through the iron sheet, and a deadly current according to one witness for the defendant. The coincidence of the decedent's death with the touching of the wire, which was certainly for the jury, and the original assumption by all present that he had received a shock, were of course impressive, and are impressive still. The examination of the coroner's physician hardly makes against it at all, for he was most perfunctory. We need not say whether without Latwis there would have been a case, and we do not, because the whole evidence may be quite different another time; but we do say that his credibility was for the jury, and that with his testimony in the case an issue arose of which the court could not dispose. It is to be remembered that the two men who swore that the old lead had been cut at the tap box were still in the defendant's employ, and one was responsible for that duty. It was, of course, not impossible that, had he neglected it before, he might have cut off the lead within the time at his disposal before the other employees saw it. As indicated already, the case is one which the trial judge would have been justified in taking strongly in hand, but in the end the jury alone could answer the issue.

[3] The trial judge set aside the verdict, and then directed a verdict of his own, upon which he entered judgment. These last two acts he had no power to do. Slocum v. N. Y. Life Ins. Co., 228 U. S. 376, 33 S. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029. His only lawful conclusion upon setting aside the verdict was to set the cause down for a new trial. While his action in entering judgment is of course before us, we can do no more than to reverse it and his directed verdict, and thereupon to conclude as he should have concluded, by directing a new trial. Had he let the verdict stand and directed judgment in spite of it, we might perhaps have reversed the judgment and entered the original judgment upon the verdict, which in that case would have stood throughout. Hoffman v. American Mills Co. (C. C. A.) 288 F. 768. Had his judgment of nonsuit been right, we might perhaps have affirmed it, though he had set aside the verdict.

[4] The plaintiff wishes us to go further, and review the order setting aside the verdict, as well as what followed upon it; but this we are without power to do. U. S. v. Buford, 3 Pet. 12, 32, 7 L. Ed. 585; Blunt v. Smith, 7 Wheat. 248, 272, 5 L. Ed. 446; Brown v. Clarke, 4 How. 4, 15, 11 L. Ed. 850; Pomeroy's Lessee v. Bank of Indiana, 1 Wall. 592, 598, 17 L. Ed. 638. It has been the uniform rule that an order granting or denying a new trial is not reviewable by writ of error, even though it proceed in fact from errors of law. U. S. v. Buford, supra. Hence we must stop in our review at the trial judge's action after setting aside the verdict; all we can do is to leave the case as he should then have left it. If it be argued that the trial judge did not grant a new trial, but only set aside the verdict, we answer that we gain no jurisdiction to review his decision because he followed it to an irregular conclusion. All we can do is to provide that his unreviewable action shall result in that which the law alone admits—a new trial. Pellerin v. International Cotton Mills (C. C. A. 1) 248 F. 242, 160 C. C. A. 320.

The cases relied on by the plaintiff are not in point. In these the plaintiff had got judgment on a verdict in the trial court, which the Circuit Court of Appeals had reversed. The Supreme Court, reversing the Circuit Court of Appeals, re-entered the original judgment on the verdict. But the Circuit Court of Appeals has no discretionary power over verdicts, and its action in setting aside the verdict was only an incident to its power to reverse the judgment. The Supreme Court could therefore review its whole action, and restore the case to the status quo. So could we, if we had power to review the action of the trial court in setting aside the verdict.

Judgment reversed; new trial ordered.

MANTON, Circuit Judge (concurring). I concur in Judge HAND'S views that the deceased was engaged in interstate commerce, and that whether or not he died as a result of electric shock was a jury question. In view of the later utterances of the Supreme Court, our decision in Hudson & Manhattan Co. v. Iorio, 239 F. 855, 152 C. C. A. 641, now relied upon by the defendant in error, is of doubtful authority. This railroad was engaged exclusively in interstate commerce, and what the deceased did was a part of that commerce. The particular work he was doing, as set forth in the prevailing opinion, engaged him in interstate commerce.

A jury could hardly reach any other conclusion but that the deceased died as a result of an electric shock. He was carrying a piece of sheet iron, and tried to lower it through the ventilating leg. While doing so, he cried out, fell over, and died at once. The bottom of the sheet iron struck a live wire uninsulated, and this had sufficient current to kill him. These outstanding facts, and other surrounding circumstances as stated in the prevailing opinion, satisfied one jury, and undoubtedly will another, that the deceased died as a result of an electric shock.

The judgment dismissing the action of the plaintiff in error should be reversed, and the order of reversal should provide that the judgment entered on the verdict of the jury stand. At the trial, a motion for a nonsuit was made, pursuant to the New York practice, and denied. The defendant in error offered its proof, and at the end of the entire case a motion for the direction of a verdict in favor of the defendant in error was denied. The case was submitted to the jury, and a verdict rendered for the plaintiff in error. Judgment was entered on the verdict. Neither after the rendition of the verdict, nor after the entry of the judgment, does the record disclose any motion made to set aside the verdict. The trial judge, in his opinion rendered nearly three months after the entry of judgment, said:

"At the close of the trial, a motion was made by the defendant to set aside the verdict, which had been rendered by a jury in favor of the plaintiff for the sum of $21,000. The motion was denied. Thereafter the defendant requested that the court take the matter under advisement further, in order that the testimony might be written out and a brief submitted in behalf of the defendant, with an opportunity to plaintiff to submit a brief, if she so desired."

He thereupon reached the conclusion that the intestate was not engaged in interstate commerce, set aside the verdict, and entered judgment for the defendant. This resulted in vacating the judgment entered upon the verdict. It was error to conclude that the deceased was not engaged in interstate commerce. The question was one of law, and, although it was submitted to the jury as a question of fact, the plaintiff was and is entitled to a ruling that the deceased was engaged in interstate commerce as a matter of law.

The order entered on this decision recites "That the verdict of the jury in favor of the plaintiff, and the judgment entered there-

on, be and each and both of them are hereby severally and separately set aside and vacated, on the ground that the *same is contrary to law,* and that the decision of the court heretofore made, denying defendant's motion to dismiss the complaint, be and is hereby withdrawn, and said motion is hereby granted, and that a verdict be and is hereby directed for the defendant upon the whole case, and that judgment be entered for defendant accordingly."

This erroneous ruling should be corrected by reinstatement of the verdict—not merely by reversing the order and directing a new trial. It is argued that this may not be done under the principle announced in Slocum v. N. Y. Life Ins. Co., 228 U. S. 376, 33 S. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029. The Seventh Amendment of the Constitution, providing that "no fact tried by a jury shall be otherwise reexamined in any court of the United States, than according to the rules of the common law," is no bar to such procedure. What the trial judge did, although the order recites other things, was to direct a verdict for the defendant. He reserved no right to nonsuit the plaintiff in error or to direct a verdict. He denied these motions, took the verdict of the jury, and then denied the motion to set it aside and entered judgment. There was no reservation of the motion for nonsuit at any time during the course of the trial.

Since the judgment is directed for the defendant in error, the question of the weight of the evidence is not here. No complaint is made of errors in the acceptance or rejection of evidence or the charge. The procedure leading up to the court's reconsideration of the case is most unusual. From all that appears in this record, the court considered the application of the defendant in error without formal motion or notice to the plaintiff.

In the Slocum Case, a general verdict for the plaintiff was returned, and a judgment entered. The Circuit Court of Appeals reversed the judgment, with a direction to sustain the motion made at the trial and to enter judgment for the defendant. 177 F. 842, 101 C. C. A. 56. The question considered by the Supreme Court was whether the Circuit Court of Appeals erred in reversing the judgment, and, if it did not err in that regard, whether it should have awarded a new trial, instead of directing a judgment for the defendant on the evidence notwithstanding the verdict for the plaintiff. It was held that the Circuit Court of Appeals did not err in reversing the judgment, but that it did in

failing to direct a new trial, instead of giving directions to enter a verdict. It had under consideration a statute of Pennsylvania as to the practice. It held that it was an infraction of the Seventh Amendment of the Constitution, above referred to, not to do so. The Circuit Court of Appeals held that, on examination of the evidence, there was not sufficient to sustain the verdict, and on that ground directed a verdict for the defendant. They did this on the theory, not that judgment was required by the state of the pleadings, but that it was warranted by the evidence. Although practically setting aside the verdict, they did not order a new trial, but presumed finally to pass upon the issues of fact presented by the pleadings, and directed a judgment accordingly.

In Young v. Central R. Co. of N. J., which was also a case tried under the practice prevailing in the state of Pennsylvania, a judgment in favor of the plaintiff was reversed by the Circuit Court of Appeals, and the cause remanded, with instructions to the trial court, not for a new trial, but for judgment for defendant non obstante veredicto. 200 F. 359, 118 C. C. A. 465, L. R. A. 1916E, 927. The Supreme Court affirmed the judgment of reversal, and remanded the case to the trial court, but with directions for a new trial, and reversing that part of the decision of the Circuit Court of Appeals, which directed a verdict for the defendant because of the provisions of the Seventh Amendment. 232 U. S. 602, 34 S. Ct. 451, 58 L. Ed. 750.

In Pedersen v. D., L. & W. R. R., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, the plaintiff recovered for negligence of his employer while both were in defendant's service. There was a judgment for the plaintiff. Judgment was thereafter ordered for the defendant by the Circuit Court of Appeals (197 F. 537, 117 C. C. A. 33), on the ground that the verdict was not sustained by the evidence. The Supreme Court held that there was evidence to sustain the finding that plaintiff's injury was due to negligence of the defendant while he was employed in interstate commerce, and the case was one for the jury's verdict. The court said:

"A motion for a new trial was interposed by the defendant, but no ruling was had upon it, doubtless because the court concluded that it could and should render judgment for the defendant on the evidence notwithstanding the verdict. In this the court was in error, first, because it was without authority so to do; * * * and, second, because the evidence did not warrant such a judgment. Un-

less the motion for a new trial was well taken, judgment should have been given for the plaintiff on the verdict, and, subject to that qualification, the plaintiff is now entitled to such a judgment."

And again in Myers v. Pittsburgh Coal Co., 233 U. S. 184, 34 S. Ct. 559, 58 L. Ed. 906, a verdict was rendered against the coal company. On a writ of error, the case was reversed by the Circuit Court of Appeals (203 F. 221, 121 C. C. A. 427), and it was brought to the Supreme Court on a certiorari. The Circuit Court of Appeals held that, on the facts, the plaintiff had not established a right to recover, and the judgment was reversed, without directing a new trial. The Supreme Court held that there was ample testimony to carry the case to the jury, that it was error to set aside its verdict, and concluded that the judgment of the Circuit Court of Appeals be reversed, and the judgment of the District Court be affirmed, and the case was remanded to that court. Again in Fidelity Title Co. v. Dubois Electric Co., 253 U. S. 212, 40 S. Ct. 514, 64 L. Ed. 865, the Circuit Court of Appeals had reversed a judgment without ordering a new trial (253 F. 987, 165 C. C. A. 668), and the Supreme Court held that the question was for the jury; that the Circuit Court of Appeals had erred, and directed, "Judgment reversed; judgment of the District Court affirmed."

In Hoffman v. American Mills, 288 F. 768, referred to in the prevailing opinion, this court directed the District Court to enter a verdict, which had been set aside and nonsuit granted. In that case the court dismissed the complaint, although it let the verdict stand, so that it might be reinstated in the event that the Circuit Court of Appeals held it was error to order a nonsuit. Thus permitting a verdict to stand is of doubtful assistance, for it is hard to conceive of how a verdict might stand in the face of a judgment nonsuiting the plaintiff. In the case of Pelerin v. International Cotton Mills, 248 F. 242, 160 C. C. A. 320, a verdict was reinstated, but this was by stipulation of the parties as to the amount, and which also granted permission so to do.

To reinstate the verdict and judgment here would not be a re-examination of the facts tried by the jury, as was done in the Slocum Case by the Circuit Court of Appeals. The error was one of law in holding that there was no evidence to support the claim of employment in interstate commerce. The principle of the Slocum Case has application to any case where there is some evidence in the record supporting the plaintiff's action, although there may have been disagreement by the trial judge or the appellate court with the findings of the jury as to the evidence, or the effect thereof. But such rule has no application where the trial by jury has been had, and where there has been no error in denying the motion to submit the evidence to the jury, and a judgment has been entered approving the verdict of the jury. No denial of the right of trial by jury exists, and it is permissible to reinstate this verdict, within the rule announced in the Pedersen, Fidelity Co., and Myers Cases.

The order setting aside the verdict and judgment should be reversed, and the judgment allowed to stand as entered.