CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellee, v. CECIL LUNDQUIST, Appellant.

*Tautges, Wilder & McDonald* and *John W. Pendy,* for appellant.

*Sargent, Gamble & Read* and *A. B. Howland,* for appellee.

DE GRAFF, J.—I. The primary proposition on this appeal involves the correctness of the ruling of the industrial commissioner in holding that the appellant Lundquist at the time of his injury was not engaged in interstate commerce. The principal contention requires a brief statement of the record facts.

In 1926, the appellee, Chicago, Rock Island & Pacific Railway Company, was the owner of extensive yard facilities in the city of Cedar Rapids. Its main-line track extended north and south, and numerous yard and classification tracks paralleled the main line on the east side thereof. During the late summer of 1926, the Quaker Oats Company was engaged in making considerable improvements in its plant, and these changes neces-

sitated the construction of additional yards by the railway company, to serve the enlarged plant. It was decided that five additional tracks, each approximately 2,700 feet in length, should be built by the railway company upon the west side of its main-line track. At that time, a line of telegraph poles, carrying the wires of the Western Union and of the railway company, was located immediately west of the main-line track. The construction of the new tracks made necessary considerable filling in on the west side of said track, and also made necessary the removal eventually of the existing line of telegraph poles for a distance of about one-half mile. It was decided to build a pole line, to carry the wires of the telegraph company and the railway company. This line was to extend eastward across the railway tracks to the yard office, a distance of approximately 1,000 feet, thence south for a distance of more than 600 feet, thence diagonally northwest, a distance of some 1,700 feet.

The appellant Lundquist was a member of the crew which was engaged in the construction of the new pole line. Some ten poles were set, and while the crew was preparing to string a messenger or support line, to carry the cable in which the telegraph wires were to be placed, Lundquist received an injury, when he climbed upon an electric-light pole adjacent to the yard office. The pole broke, throwing him to the ground, and causing the injuries complained of herein.

The record also shows that, during the summer of 1926, the Western Union Telegraph Company had been placing its wires through the business district of Cedar Rapids in underground conduits, but this work had extended only as far as the southern part of the Rock Island yards in said city. When it became apparent that the old wires west of the main-line track would have to be removed, negotiations were entered into between the railway company and the telegraph company for the extension of the underground conduits 2,800 feet farther to the north. This work had not been authorized by the Western Union Telegraph Company at the time the appellant was injured, which was on October 3, 1926. The authorization of the extension of the underground conduits was given October 5, 1926. The existing system of telegraph wires was adequate, and there was no occasion for removing the wires, except the necessity for getting them out of the way, to permit the yard construction work to go

forward; and it conclusively appears that, while the new pole line was under construction, the old line remained in use, and messages continued to be sent over it. At the time of the injury received by Lundquist, there was no cable upon the new line, and no means of using it for transmitting messages. In brief, the new line was not in use, and in fact had not become an instrumentality of commerce.

In the light of these facts, the question is: Was the appellant, at the time he was injured, engaged in work so closely related to interstate commerce as to be necessarily and in legal contemplation a part thereof? In the final analysis, and reduced to terms, was the work in which appellant was engaged at the time of his injury "new construction,"·or was it "repair or maintenance work?" We recognize that opinions as to the scope of the Federal Employers' Liability Act have been at variance ever since the act became a law. This is true, not only as between lawyers called upon to deal with the provisions of the act, but also between judges of appellate courts, and even between members of the highest court of these United States. It will suffice, however, to cite, without reviewing the facts, some of the leading cases dealing with the legal principle involved in the case at bar.

The first case in which the Supreme Court of the United States had occasion to consider the Federal statute is *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146 (57 L. Ed. 1125). The differentiation of the underlying principle is therein mentioned by the court, speaking through Justice Van Devanter, in these words:

"Of course, we are not here concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities, and during their use as such."

Subsequently, the Supreme Court of the United States had occasion to distinguish between "new construction" and "repair or maintenance" of existing instrumentalities of transportation. *Shanks v. Delaware, L. & W. R. Co.*, 239 U. S. 556 (60 L. Ed. 436); *Raymond v. Chicago, M. & St. P. R. Co.*, 243 U. S. 43 (61 L. Ed. 583); *New York Cent. R. Co. v. White*, 243 U. S. 188 (61 L. Ed. 667).

In *Bravis v. Chicago, M. & St. P. R. Co.*, 217 Fed. 234 (C. C. A., 8th Cir.), the court had occasion to consider a case quite identical with the instant case, and it was said, speaking through the late Justice Sanborn:

"The Federal Employers' Liability Act protects only those employed in interstate commerce. Those employed in the preparation or construction of roadbeds, rails, ties, cars, engines, and other instrumentalities which are intended for use in interstate commerce, but have never been and are not in use therein, are not employed in interstate commerce, and are not protected by that act."

The rule prescribed by the Supreme Court of the United States has found application in many decisions of our state courts. See *Chicago & E. R. Co. v. Steele*, 183 Ind. 444 (108 N. E. 4) ; *Dickinson v. Industrial Board*, 280 Ill. 342. (117 N. E. 438) ; *Wallace v. New York, N. H. & H. R. Co.*, 99 Conn. 404 (121 Atl. 878) ; *Wright v. Interurban R. Co.*, 189 Iowa 1315.

The decisions relied upon by appellant are distinguishable on the factual side. See *Kinzell v. Chicago, M. & St. P. R. Co.*, 250 U. S. 130 (63 L. Ed. 893) ; *Grow v. Oregon Short Line R. Co.*, 44 Utah 160 (138 Pac. 398) ; *Collins v. Michigan Cent. R. Co.*, 193 Mich. 303 (159 N. W. 535) ; *Ross v. Sheldon*, 176 Iowa 618.

In the *Ross* case, supra, this court commented on the fact that the line of demarcation between repair work, on one hand, and construction work, on the other, is not always easily discernible, and that it is highly desirable that a rule of this character should attain as great a degree of certainty as practicable, and "such is the manifest aim of the high court." It was further pointed out in the *Ross* case that the work was not "independent construction."

Under the facts in the case at bar, it may be observed that the work upon which appellant Lundquist was engaged was the construction of an entirely new telegraph line, in a new location, upon new poles, with the use of new materials, for a distance of approximately 3,500 feet. Furthermore, at that time, the new pole line was not in service in the transmission of messages covering the movements of trains in interstate commerce. The messages were then transmitted over the old wires at the west

side of the main-line track. The new line had not yet become an instrumentality of interstate commerce, and under such circumstances, the new facilities cannot be viewed as a part of the instrumentalities of interstate commerce. The work was new construction. Resultantly, the ruling of the industrial commissioner on this proposition was correct.

II. Brief mention may now be given to certain other propositions argued by the appellant. It is contended by appellant that, even though the appellant Lundquist was not engaged in interstate commerce, the Iowa Workmen's Compensation Law is inapplicable, for the reason that the situs of the appellee railway company in all its dealings with the appellant was at the city of Chicago in the state of Illinois. With this contention we cannot agree. The appellant was employed by Mr. C. D. Hood, superintendent of telegraph for appellee. Hood maintained an office in Chicago. The employment of Lundquist did not contemplate that he should work at any particular place. The contract relationship is based on the following facts:

On March 20, 1926, Lundquist wrote from his residence at Stratford, Iowa, to Mr. Hood, asking for any kind of employment. On March 23d, a reply was given, stating that there was nothing available at that time, but that a vacancy might occur in the near future, and that he (Hood) expected "to have several gangs working in Iowa." In this letter a blank application for employment was inclosed, and Lundquist was requested to fill out and return the same. This was done, and it was therein stated that the residence of Lundquist was Stratford, Iowa. On March 30th, Hood wired Lundquist:

"Can use you as helper at once. When can you report and what is nearest Rock Island point where can place pass?"

Lundquist replied the same day:

"Can report Friday morning. Nearest Rock Island point Gowrie, Iowa."

Hood answered, directing Lundquist to report to F. A. Grant, at Roland, Arkansas, and a letter to Lundquist, in care of appellee's agent at Gowrie, was forwarded by Hood. The letter read as follows:

"Enclosing pass in your favor, Gowrie to Roland, Arkansas, where you will report to foreman F. A. Grant for work as helper at rate of 47¢ per hour."

Lundquist accepted the pass and reported at Roland, Arkansas, in accordance with the instructions contained in Hood's letter.

It was contended by appellant before the industrial commissioner, and also in the district court, that the contract of employment was entered into in Illinois, and that the rights of the parties were governed by the laws of Illinois, to the exclusion of the laws of Iowa. Apparently appellant has now shifted his position, and claims that the contract of employment was completed in the state of Arkansas, and consequently the rights of the parties are governed by the laws of Arkansas. Incidentally, no pleading or proof was offered, respecting the laws of either Illinois or Arkansas.

It is apparent that the communication to Lundquist did not complete the contract of employment, since it was optional with him whether he would accept the conditions of employment. The fact is, Lundquist did accept, and boarded a train for Roland; and it must be held that his contract of employment was consummated in the state of Iowa. A contract is made at the time and place where the last act necessary to a complete meeting of the minds of the parties is performed. The previous correspondence fixed the terms of the contract, the general nature of the work, and the wages to be paid. He accepted the terms in the state of Iowa. See *Globe Cotton Oil Mills v. Industrial Acc. Comm.*, 64 Cal. App. 307 (221 Pac. 658); *Moran v. Moran*, 144 Iowa 451.

It must be said that the business of the appellee-employer, for the purpose of the transaction in question, was localized within this state. The employee was injured while transacting the business of the employer in this state, and the compensation act of this state is, therefore, applicable. See *Logan v. Missouri Valley B. & I. Co.*, 157 Ark. 528 (249 S. W. 21); *Mitchell v. St. Louis Smelt. & Ref. Co.*, 202 Mo. App. 251 (215 S. W. 506); *Hagenback & Great Wallace Show Co. v. Randall*, 75 Ind. App. 417 (126 N. E. 501); *American Radiator Co. v. Rogge*, 86 N. J. Law 436 (92 Atl. 85); *Perlis v. Lederer*, 189 App. Div. 425 (178 N. Y. Supp. 449); *Johns-Manville, Inc., v. Thrane*, 80 Ind. App.

432 (141 N. E. 229) ; *Ginsburg v. Byers*, 171 Minn. 366 (214 N. W. 55).

In the light of these precedents, and under the affirmative facts in the case at bar, the provisions of the Workmen's Compensation Act of Iowa govern the rights of the parties, unless the appellant, at the time of his injury, was engaged in interstate commerce. This latter question we have answered in the negative.

III. One further proposition is presented and argued by the appellant, to the effect that the appellee had no right to prosecute the present action before the industrial commissioner, for the reason that a restraining order had been issued by the district court of Dakota County, Minnesota. Sufficient to state that no proof of the pendency of the alleged action in the court of Minnesota was offered at the time the industrial commissioner assumed jurisdiction of the case. Appellant did exhibit what was said to be an office copy of a restraining order, claimed to have been issued by a court in Minnesota, purporting to restrain the appellee from proceeding with the hearing, pending the application for a temporary injunction, which application would be heard June 18, 1927. No proof of the service of such order upon the railway company was offered, and there is no showing in the record that any further proof was ever brought to the attention of the commissioner. At the time of the arbitration hearing (June 8, 1927), it was agreed that the matter might be continued, and that the arbitration committee would reconvene at Des Moines, on order of the deputy commissioner; and, pursuant to the order of the deputy, the committee did reconvene at Des Moines on July 15, 1927.

The record is silent as to the disposition of the application for a temporary injunction, and no further proof of any injunction was offered. Under this record, it is unnecessary to discuss the full faith and credit clause of the Constitution of the United States. See *State ex rel. Bossung v. District Court*, 140 Minn. 494 (168 N. W. 589) ; *Union Pac. R. Co. v. Rule*, 155 Minn. 302 (193 N. W. 161) ; *Frye v. Chicago, R. I. & P. R. Co.*, 157 Minn. 52 (195 N. W. 629) ; *Hovel v. Minneapolis & St. L. R. Co.*, 165 Minn. 449 (206 N. W. 710).

We conclude, therefore, that the decree entered by the lower

court is in accordance with the law. The industrial commissioner was the trier of the facts. *O'Neill v. Sioux City Term. R. Co.*, 193 Iowa 41; *Flint v. City of Eldon*, 191 Iowa 845. The appellant was given an award for the maximum amount of compensation under the Iowa statute. The judgment of the district court is—*Affirmed*.

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.